Jacob Oswald, Appellee, v. Grand Trunk Western Railway Company, Appellant.

Elizabeth Oswald, Appellee, v. Grand Trunk Western Railway Company, Appellant.

Gen. No. 38,054.

Opinion
filed December 27, 1935.   Rehearing denied January 7, 1936.

WINSTON, STRAWN & SHAW, of Chicago, for appellant; EDWARD W. EVERETT and RAYMOND O. MITCHELL, both of Chicago, of counsel.

ROYAL W. IRWIN, of Chicago, for appellees.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This is an appeal from the circuit court of Cook county by the defendant, Grand Trunk Western Railway, asking that the two judgments rendered against it, one for $3,000 in favor of Jacob Oswald and the

other for $1,000 in favor of Elizabeth Oswald, be reversed.

The accident out of which these causes of action grew occurred on the 21st day of December, 1926, at a point where Western avenue intersects the Grand Trunk tracks. The two plaintiffs, husband and wife, were in an automobile, driving south on Western avenue between five and six o'clock in the evening and when crossing the tracks of the Grand Trunk Railway Company they were struck by a passenger train coming from the east and sustained the injuries resulting therefrom.

The usual questions of care and negligence are present in this case. It was dark and snowing at the time of the accident. A street car going south on Western avenue was being followed by the two plaintiffs in their automobile. After the street car stopped to discharge passengers, the plaintiffs turned out to the right of the street car and passed it and proceeded on their way across the track. As they approached the track they saw the train for the first time, too late to avoid the collision. Both plaintiffs stated that they were familiar with the crossing, having passed over it upwards of 50 times and that the defendant always had a flagman at the crossing and that they always relied upon him to direct them across the crossing; that this night they looked for the flagman and seeing none there, they thought that it was safe for them to cross. It is further claimed by plaintiffs that as they got upon the track they saw the flagman running toward his shanty, to get his lantern.

The claim on behalf of the defendant is that the engineer blew the whistle as he approached the crossing and there was a continuous ringing of the bell; that the brilliant headlight on the engine threw a light for a great distance; that the railway track was straight and the train could have been seen if the plaintiffs looked in

that direction, and, consequently, the accident was the result of contributory negligence on the part of the plaintiffs.

The first point raised by the defendant is that the plaintiffs were not justified in depending solely upon the flagman to give a warning and were not excused from using their senses of sight and hearing for their own safety.

In *Greenwald v. Baltimore & Ohio R. Co.,* 332 Ill. 627, at page 631, the court said:

"The rule has long been settled in this State that it is the duty of persons about to cross a railroad track to look about them and see if there is danger, and not to go recklessly upon the track but to take proper precaution to avoid accident. It is generally recognized that railroad crossings are dangerous places, and one crossing the same must approach the track with the amount of care commensurate with the known danger, and when a traveler on a public highway fails to use ordinary precaution while driving over a railroad crossing, the general knowledge and experience of mankind condemns such conduct as negligence." And further on in the same case the court continuing, said: "One who has an *unobstructed* view of an approaching train is not justified in closing his eyes or failing to look, or in crossing a railroad track in reliance upon the assumption that a bell will be rung or a whistle sounded. No one can assume that there will not be a violation of the law or negligence of others and then offer such assumption as an excuse for failure to exercise care. The law will not tolerate the absurdity of allowing a person to testify that he looked but did not see the train when the view was not *obstructed,* and where, if he had properly exercised his sight, he must have seen it." (Italics ours.)

In this case the plaintiffs both testified that the street car obstructed their view so that they could not see the

approaching train. The question of due care on the part of the plaintiff is a question for the jury when there is any evidence of the same given on the trial from which any legitimate inference may be legally and justifiably drawn.

The second point made by the defendant is that the verdict should have been directed for the defendant as to both plaintiffs because both plaintiffs testified that they relied entirely on the flagman's warning.

The plaintiff Elizabeth Oswald testified that she had been accustomed to seeing a flagman at this crossing if a train was coming and that on the occasion in question she looked straight ahead in an endeavor to locate the flagman and was watching for signals; that after the street car's first stop it moved up and they also went ahead. Plaintiff testified that she did not hear or see the train until they passed the street car and were on the track.

It is next contended that it was the duty of the plaintiff Elizabeth Oswald to notify the driver of the car of the approaching train when she did see it. The uncontested evidence in the record is that upon her seeing the train, she fainted. The state of being unconscious would naturally relieve her from the performance of any duty which the law would otherwise place upon her.

The plaintiff Jacob Oswald testified that he relied on the flagman at the crossing; that when he was back of the street car he looked and listened, but neither heard nor saw any train; that when he passed the street car his automobile was right on the rails when he stopped; that he saw the flagman run out in the street; that he tried to stop as quickly as he could, but the front wheels of his automobile were just about in the north rail.

In the *Greenwald* case, *supra,* the court further said: "The question of due care on the part of a plaintiff

is a question for the jury when there is any evidence given on the trial which, with any legitimate inference that may be legally and justifiably drawn therefrom, tends to show the use of due care.''

The testimony of the plaintiffs tends to show that they relied upon the fact that it had been customary for the defendant to protect persons crossing over the railroad by having a flagman at the crossing whenever a train was approaching and that they were induced to cross upon said tracks because of the fact that the flagman was not present.

As the Supreme Court said in *Chicago & E. I. R. Co. v. Schmitz,* 211 Ill. 446, at page 451:

''The fact, that the gates on the west side of the Western Indiana tracks were raised after the passage of the freight train to the south, operated as an invitation to her to proceed west. Whether she was justified in doing so, and whether she took proper pains to look north and south to see if any train was coming, were questions of fact to be submitted to the jury.''

There are many cases throughout the courts of the country wherein the question as to whether some failure on the part of the railway company to furnish a warning of an approaching train, either by bell, gates or flagman which at other times had usually been employed, relieves the traveler on the road of the same degree of care for his safety as would otherwise be required. These cases proceed on the theory that a traveler has a right to expect and be guided by the warning usually employed at the crossing and that, although the warning was intended as a notice to the traveler, the absence of the warning justified the traveler if he relaxed his usual caution, some of the cases going to the extent of saying that it is an invitation extended to the traveler to cross the tracks with an implied assurance that no train is approaching, which he may to some extent rely upon and lessening the oth-

erwise imperative duty of the traveler to stop, look and listen. *Wabash Ry. Co. v. Walczak,* 49 F. (2d) 763; *Birmingham So. Ry. Co. v. Harrison,* 203 Ala. 284, 82 So. 534; *Welch v. Baltimore & Ohio R. Co.,* 7 Pen. (Del.) 140, 76 Atl. 50; *Brender v. New York, O. & W. Ry. Co.,* 177 N. Y. S. 469. One who knows that a flagman is employed by a railroad company at a certain crossing may presume that he will be at his post and warn him of the approach of trains, and is justified in proceeding to cross the track in the absence of the watchman, although his view in one direction is partially obstructed. *Chicago & A. R. Co. v. Blaul,* 175 Ill. 183; *Chicago, St. Louis & Pittsburg Railroad Co. v. Hutchinson,* 120 Ill. 587; *Wabash Ry. Co. v. Walczak,* 49 F. (2d) 763; *Teague v. St. Louis Southwestern Ry. Co.,* 36 F. (2d) 217.

It is next contended that the court committed error in refusing to give an instruction based on what is known as the ''proposition for an instruction,'' which reads as follows:

''The plaintiffs, Jacob Oswald and Elizabeth Oswald, as a matter of law, were not justified in relying upon the presumption that a flagman would be at the crossing to give a warning. Nor were they justified in relying upon the presumption that a bell would be rung or a whistle sounded.''

This abstract proposition of law would not be of assistance in determining whether or not either party was guilty of negligence. We think that the instructions given by the court presented the rights of both parties under the law and it was not error to refuse this proposition. Other propositions of instructions submitted to the court were rightfully refused.

In the instant case where evidence was introduced tending to show that the flagman was seen running to his shanty to obtain his lantern to flag the approaching automobile, and that he did so too late, that fact at least left the question of any contributory negligence

on the part of the plaintiffs as a question of fact to be determined by the jury.

The next contention of the defendant is that the court erred in the consolidation of the causes. The new Practice Act, section 23, provides that:

"Subject to rules, all persons may join in one action as plaintiffs, in whom any right to relief in respect of or arising out of the same transaction or series of transactions is alleged to exist, whether jointly, severally or in the alternative, where if such persons had brought separate actions any common question of law or fact would arise: Provided, that if upon the application of any party it shall appear that such joinder may embarrass or delay the trial of the action, the court may order separate trials or make such order as may be expedient, . . ." Ill. State Bar Stats. 1935, ch. 110, ¶ 151.

Section 44 of the Civil Practice Act provides in part:

"(1) Subject to rules any plaintiff or plaintiffs may join any causes of action, whether legal or equitable or both, against any defendant or defendants; . . ." Ill. State Bar Stats. 1935, ch. 110, ¶ 172.

Section 51 of the Civil Practice Act provides in part:

"An action may be severed, and actions pending in the same court may be consolidated, as an aid to convenience, whenever it can be done without prejudice to a substantial right." Ill. State Bar Stats. 1935, ch. 110, ¶ 179.

Apparently it was the intention of the legislature to permit the court in its discretion to consolidate causes of action for the hearing in order to save time and expense. In the instant case the evidentiary facts were substantially the same as to both plaintiffs, and whilst there may be a difference as to the rule relating to contributory negligence of plaintiffs and their various legal duties at the time and preceding the accident, they could have been and were taken care of by the court's instructions. We are of the opinion that the

court, acting under the discretionary power given to it by statute, was not wrong in ordering both cases tried together. We cannot see how defendant's rights were prejudiced and no resulting damage has been pointed out.

It is contended by defendant that error was committed by the trial judge in his rulings upon the admissibility of the evidence and also that his conduct toward the defendant was prejudicial. We gather from this record that both counsel were quite earnest in presenting their conflicting views as to the law and evidence. The trial judge was apparently attempting to conduct the hearing without error and we do not think that the rights of the defendant were prejudiced in any way by his rulings in so far as this record discloses.

Defendant further contends that the court erred in giving certain instructions to the jury. We have examined the instructions and we believe that the jury was fairly instructed on all phases of the law applicable to the facts and that no error was committed in this regard.

It is finally contended that the verdicts are contrary to the law and evidence and that the court erred in not granting a new trial. In a case of this kind where there is conflicting evidence as to the material facts, a jury having seen the witnesses and heard them testify are well fitted to pass upon the facts. Time and again have the courts of last resort denied the right of judges to weigh the evidence and set aside verdicts because they might, if sitting as jurors, arrive at a different conclusion. As stated by our own Supreme Court in the case of *People v. Hanisch,* 361 Ill. 465, 468: "Whatever may be the rule in certain other jurisdictions, we firmly adhere to our often-asserted belief that it is the province of the jury, alone, to determine the weight of the evidence and the credibility of witnesses. If it were not so there would be little use for the jury system. The

jury, as a fact-finding body, is of such importance that an abridgment of its functions in this regard and an appropriation of them by the judges would mean the forsaking of a valued tradition in our system of jurisprudence. The utmost caution should be exercised not only by the trial courts but by the reviewing courts to uphold the sanctity of the trial by jury.''

We are of the opinion that we would not be justified in disturbing the judgments for any errors that have been called to our attention. Therefore, for the reasons stated in this opinion, the judgment of the circuit court is hereby affirmed.

*Judgment affirmed.*

HALL, P. J., and HEBEL, J., concur.