Gladys M. Grubb, Appellee, v. Illinois Terminal Company, Appellant.

Gen. No. 8,994.

 Opinion filed June 3, 1936. Rehearing
denied October 6, 1936.

GRAHAM & GRAHAM, of Springfield, for appellant.; HUGH J. GRAHAM, JR., of counsel.

A. M. FITZGERALD and LEE W. ENSEL, both of Springfield, for appellee.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

This is an appeal taken by the Illinois Terminal Company, defendant appellant, from a judgment in favor of Gladys M. Grubb, plaintiff appellee, rendered by the circuit court of Sangamon county, in a suit in which plaintiff sought to recover damages alleged to have been sustained by her on account of the negligence of defendant.

The complaint charges in its several counts that defendant, on April 7, 1934, operated its electric cars over a crossing of U. S. Route 66, south of the city of Springfield; that one of its cars was operated in an easterly direction while plaintiff was riding in an automobile driven by Dorothea Grubb over said crossing; that the plaintiff was at all times in the exercise of due care for her own safety; that the defendant negligently drove its electric cars so that said cars came into collision with the automobile, and plaintiff was injured; that the electric cars were driven at a dangerous rate of speed, 60 miles per hour, over said crossing; that the defendant failed to give any warning by bell, whistle, or otherwise, of the approach of the cars to said crossing; that by reason of such negligence the train of defendant collided with the automobile in which plaintiff was riding, and injured her.

Defendant answering denied each charge of negligence and denied due care by plaintiff, and alleged negligence in the approach of the automobile and denied that the negligence of defendant was the proximate cause of the collision.

The accident in question took place south of Springfield, Illinois, where U. S. Route 66 crosses the railroad of appellant at right angles and at grade. The railroad runs directly east and west and U. S. Route 66 north and south. The highway is level and the concrete slab is 20 feet in width; the railroad is level east of the crossing, but a short distance west of the crossing it rises at about a two per cent grade so that the top of a rail, at the top of a viaduct over another railroad, is about 27 feet higher than the pavement on U. S. Route 66 at the crossing. This is at a point about 1,400 feet west of the pavement. The defendant installed an electric flash signal at this crossing, one on the north side and one on the south side of the track. As one approached this crossing from the south, there are several buildings located on the west side of the highway, the east side being open and unobstructed for quite a distance. On the west side is a two-story house, located 46½ feet south of the track and 74 feet from the eastern edge of the slab; on the north side of this house is an addition, the northeast corner of which is 38½ feet from the track.

Defendant's Exhibit 2 is a photograph, which the photographer testified showed correctly what would be seen by a person whose eye was in the position of the camera lens at that time. The camera was placed 44 feet south of the track, looking west, and was right at the edge of the right-hand side,—the east side of the road,—just off the slab, the east edge of the slab. This photograph shows the viaduct and a fill at the east end of the viaduct, which is about 750 feet west

of the hard road, and is about 13 feet in height and gradually slopes toward the pavement, and a short distance west of which it is of the same elevation as the hard road.

On the west side of the highway, about 20 feet south of the house just mentioned, is a two-story house located back from the highway, about the distance of the first house mentioned, and 60 feet south of this house is a filling station located about 200 feet south of the railroad track. The train consisted of a motor and two trailers and was about 180 feet long and 13½ feet high. The automobile in which plaintiff was riding was a Ford, 1932 coach, and was in first class operative condition.

Appellee and her sister, Dorothea who was driving, and Bonnie Lewis were going north to Springfield. All of them were riding in the front seat, Bonnie in the middle and appellee on the right-hand side. The driver was on the west side of the car. They were traveling at a speed of about 20 miles per hour, and just as they were about to cross the track of appellant a train, traveling in an easterly direction, crossed the hard road and the car in which appellee was riding ran into the side of the train and the driver of the car, Dorothea, died as a result of the collision and appellee, Gladys, was severely injured.

The jury, upon the trial of said cause, returned a verdict for $10,000 and the court, after denying a motion for a new trial, entered judgment upon the verdict.

At the close of the evidence for plaintiff the defendant made a motion to instruct the jury to find the defendant not guilty, which was overruled by the court; and at the close of all the evidence defendant made a motion asking the court to instruct the jury to find defendant not guilty, the court reserving its decision on said motion.

After the return of the verdict of the jury the court denied the motion of defendant, made at the close of all the evidence, to instruct the jury to find the defendant not guilty. The defendant, after the motion for new trial was overruled, moved the court in writing for a judgment, notwithstanding the verdict in favor of the plaintiff, alleging several reasons.

Appellant assigned errors and asks that this court reverse the judgment of the circuit court of Sangamon county; or, in case this court does not reverse the judgment, that the judgment of the circuit court be reversed and the cause remanded to that court.

The evidence is contradictory as to the speed of the automobile as it approached the crossing in question, and also as to the speed of the train as it approached the crossing. Several witnesses testified that the speed of the automobile was from 20 to 50 miles per hour, and the speed of the train was fixed at from 20 to 45 or 50 miles per hour.

Appellee and her sister testified that no horn or whistle was sounded from the train. A large number of persons testified that a horn or whistle was sounded as the train approached the crossing. At the time of the accident the automobile came in contact with the standard which supported the flash signal on the south side of the railroad, and which was located on the east side of the roadway about eight feet from the track and demolished the same. Several witnesses, including appellee and her sister, testified that, as the automobile approached the crossing, the flash signal did not operate on the south side of the railroad, and on behalf of appellant two witnesses testified that they observed the south side flasher operating when trains were passing in the morning. The accident occurred after 11:00 o'clock a. m.

It is insisted by appellant that the court erred in refusing to direct a verdict and to enter judgment for

defendant appellant because appellee wholly failed to show she exercised due care, whether she was a guest occupant of the automobile or a member of a joint enterprise with her sister, Dorothea Grubb, and wholly failed to show that any negligence of appellant was the cause of her injury.

On the part of the plaintiff the evidence tends to show, when they came to the crossing, appellee cautioned her sister, who was driving, to be careful as there might be trains coming, and she said she would, and slowed to 20 miles per hour; that appellee lowered the window on the east side of the car and she looked east and saw no train, and then all three of the occupants of the car looked to the west, and Bonnie said there isn't anything coming from this direction, and I said I don't think there is either because the lights are not working. Appellee testified that there were no lights working on the south side as they approached the crossing. She was corroborated by her sister, Bonnie Lewis, in cautioning her sister, Dorothea, to slow down.

It is true that the rule is in this State that it is the duty of persons about to cross a railroad track to look about them and see if there is danger and not go recklessly upon the track. When a traveler on a public highway fails to use ordinary precaution in driving over a railroad crossing, such conduct is condemned as negligence, and one who has an unobstructed view of an approaching train is not justified in closing his eyes or failing to look, or in crossing the track or in relying upon the assumption that a bell will be rung or a whistle sounded. *Greenwald v. Baltimore & O. R. Co.*, 332 Ill. 631.

In this case it appears from the evidence that the view of plaintiff and the driver of the car was more or less obstructed by the buildings, on the west side

of the street, from a point 38½ feet south from the railroad to over 200 feet, and it was not possible to get a view of the track for any great distance to the west until one reached a point on the east side of the pavement 44 feet south of the track.

Appellant had established a system of flash signals at this crossing to warn persons using the same of the approach of trains. From the testimony it appeared that, after reaching the crossing, the driver was cautioned, and all of the occupants of the car looked in both directions and saw no train, and plaintiff came to the conclusion no train was coming because the flash signal on the south side of the railroad was not working, and they proceeded at the rate of 20 miles per hour when they came in collision with the train.

The testimony of the plaintiff tends to show that the occupants of the car relied upon the fact that the flash signal was not working and therefore there was no train coming.

In the case of *Oswald v. Grand Trunk Western Ry. Co.,* 283 Ill. App. 86, it is said there are many cases throughout the courts of the country wherein the question, as to whether some failure on the part of the railroad company to furnish a warning of an approaching train, either by bell, gates, or flagman, which at other times had usually been employed, relieves the traveler on the road of the same degree of care for his safety as would otherwise be required. Those cases proceed on the theory that the traveler has the right to expect and be guided by the warning usually employed at the crossing, and that, although the warning was intended as a notice to the traveler, the absence of the warning justified the traveler, if he relaxed his usual caution, some of the cases going to the extent of saying that it is an invitation extended to the traveler to cross the tracks with an implied assur-

ance that no train is approaching, which he may to some extent rely upon and lessening the otherwise imperative duty of the traveler to stop, look and listen.

The question of due care on the part of plaintiff is a question for the jury, when there is any evidence of the same given on the trial, from which any legitimate inference may be legally and justifiably drawn. *Oswald v. Grand Trunk Western Ry. Co., supra.*

It is insisted by appellant that appellee and the driver were engaged in a joint enterprise. The evidence of the plaintiff is that they were going to buy wall paper and paint for one of the rooms in their home. Appellee testified we, myself, Dorothea and Bonnie were going to pay for this. All three of us just went together and bought the gasoline, and whatever it cost, for us to come up here.

Upon this testimony it is insisted that they were engaged in a joint enterprise. And it is insisted that every element in the constitution of a joint enterprise between the sisters is clearly shown without a particle of contradiction.

In *Fisher v. Johnson,* 238 Ill. App. 25, it is said:

The parties cannot be said to be engaged in a joint enterprise unless there is a community of interests in the objects or purposes of the undertaking and an equal right to direct and govern the movements of each other.

The court in its opinion in that case further said, "And we might add, in the language of *Nonn v. Chicago City Ry. Co.,* 232 Ill. 378, 'There has not been a scintilla of evidence pointed out which indicates that appellee could direct or control the movements of the wagon or the method of driving. The driver was in sole charge. This being the state of the record, we cannot agree with appellant's contention that the negligence of the driver, if any, would be imputed to appellee.' "

In this same case it is said by the court:

"Referring to cases of joint enterprise it was said in *Robison v. Oregon-Washington R. & Nav. Co.,* 90 Ore. 509:

" 'In all of them there runs a vein of common financial interest indicating a *quasi* partnership entailing the usual joint control. This would seem to furnish the ultimate distinguishing characteristic of joint venture in such cases, which is none other than the right, either express or implied, to direct the movement of the vehicle employed in the transportation connected with the venture. This must be so, because fault in the operation of the vehicle is charged as negligence.' If the control of the vehicle is outside of the scope of the joint scheme or is vested exclusively in one of the members of it, imputed negligence in operation will not arise.

"The right to direct or participate in the control of the vehicle claimed to be used in a joint enterprise has frequently been applied in testing whether the negligence of the driver could be imputed to his companion, and the rule, as above stated, is supported by the greater weight of authority."

In *Thomas v. Buchanan,* 357 Ill. 270, it is said: While deceased was required to exercise due care and caution for his own safety while riding in the automobile of Anderson, yet, so far as the evidence discloses he had no authority over Anderson in the operation of the automobile, and no agency being shown the negligence of Anderson, if any, cannot be imputed to the driver in the suit brought by his legal representatives against the third person to recover damages for injuries sustained by him, which occasioned his death, citing the case of *Nonn v. Chicago City Ry. Co., supra.*

There is nothing in the testimony relied upon that in any way tends to indicate that appellee could direct or control the movements of the automobile, or the

method of driving. Dorothea, the sister, was in sole charge. In this state of the record we cannot agree with appellant's contention that the negligence of Dorothea, the driver of the car, if any, could be imputed to appellee so far as any joint enterprise, that the evidence showed appellee and the driver of the car might have been engaged in. Appellant contends that the court permitted the witness, Rodgers, to testify that after the accident a new flasher had been installed. It appears from the record that, on cross-examination, appellant asked the witness: "You had never seen them flash until after the accident," to which the witness answered, "I had never seen them flash until after the accident. They put in new ones and they worked." On motion of appellant the answer was excluded. Then, on redirect examination, counsel for appellee asked the witness, "You say they changed these signal lights after the accident." Appellant objected, saying that was not brought out by me, and the court permitted the witness to answer; and on further questioning answered, Yes; and further testified, that they were working perfectly.

While the court should have sustained the objection to the question of appellant on redirect examination, as to a change in the signal lights after the accident, yet the undisputed evidence is that the standard supporting the signal lights on the south side of the railroad was broken, and we do not think permitting the witness to testify as to the putting in of new lights was reversible error.

Appellant also complains of the refusal of the court to give its instruction No. 4, and in the giving of appellee's instructions Nos. 6 and 7. In the giving of instructions Nos. 6 and 7 of appellee, we are of opinion that the court did not err. Instruction No. 4 of appellant which the court refused to give was as follows:

If you believe from the evidence that the plaintiff and the driver of the automobile in which she was injured were, at the time of the collision in question, engaged in a joint purpose to buy material in which each had an interest, and each were to bear part of the expense, and that the plaintiff and the driver of the automobile were each to share in the automobile expense of the trip, and each of them had an equal right to control the course of the trip, then the plaintiff would be chargeable under the law with any negligence of the driver of the automobile, which contributed in any degree to the collision which occurred and to the injury of plaintiff, and in such case, if the driver of the automobile failed to use due and reasonable care in approaching the crossing where the collision occurred and thereby contributed to the happening of the collision, you should find the defendant not guilty.

For the reasons heretofore given we are of opinion that the court did not err in refusing appellant's instruction No. 4. While appellant assigned a large number of errors, the foregoing is all that was relied upon in its argument; and we are of opinion that no error was committed in submitting the case to the jury. As to the contention that the verdict was contrary to the manifest and overwhelming weight of the evidence. As before shown the evidence was conflicting as to material facts, and the jury, having seen the witnesses and heard them testify, were qualified to pass upon the facts. It is the province of the jury to pass upon the facts in the case, and judges are not permitted to weigh and set aside verdicts, because they might, if sitting as jurors, arrive at a different conclusion. We quote from the case of *People v. Hanisch,* 361 Ill. 465, 468: ''Whatever may be the rule in certain other jurisdictions, we firmly adhere to our oftenasserted belief that it is the province of the jury, alone,

to determine the weight of the evidence and the credibility of witnesses. If it were not so there would be little use for the jury system. The jury, as a fact-finding body, is of such importance that an abridgment of its functions in this regard and an appropriation of them by the judges would mean the forsaking of a valued tradition in our system of jurisprudence. The utmost caution should be exercised not only by the trial courts but by the reviewing courts to uphold the sanctity of the trial by jury."

When appellant insists that to go upon a railroad in the path of a moving train, when an unobstructed view of the track is open for more than 40 feet from the track, is contributory negligence as a matter of law, it failed to take into consideration the speed of the train, and that the evidence discloses that the occupants of the car looked in both directions, and the fact that there was evidence in the record to the effect that the flash signal on the side from which the automobile was approaching was not working, and thus conveying to them the information that no train was coming and justifying them to relax the required caution and extending to them an invitation to cross the track, with an implied assurance that no train was approaching, which they to some extent could rely upon, and lessening the otherwise imperative duty to stop, look and listen.

We are of opinion that we would not be justified in disturbing the judgment of the circuit court, and the same is affirmed.

*Affirmed.*