Charles E. Langston, by Bryan Langston, his father and next friend et al., Appellants, v. Chicago and Northwestern Railway Company, Appellee.

Gen. No. 10,054.

262

Opinion filed April 18, 1946. Opinion modified and rehearing denied January 8, 1947. Released for publication February 5, 1947.

SNYDER & CLARKE, of Waukegan, for appellants; GERALD C. SNYDER, of Waukegan, of counsel.

GEORGE W. FIELD, DRENNAN J. SLATER and JAMES B. O'SHAUGHNESSY, all of Chicago, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

On February 3, 1944, at about 2: 30 o'clock, a. m. an automobile driven by Charles L. Spoo, now deceased, in which appellants Charles E. Langston, Ruth Bargar, Rosalie Radicella, and three other persons, were riding, was proceeding east in a fog on State Highway 120, about one mile west of Waukegan, the highway at that point being known as Belvidere street, and ran into the side of a freight train of appellee, which was proceeding south across the highway. Charles L. Spoo was killed, and the appellants above named were severely injured.

Appellants sued appellee in the circuit court of Lake county to recover damages on account of the accident. The amended and supplemental complaint consisted of four general negligence counts, the first three of which alleged personal injuries to the three named appellants, respectively, and the fourth count was based on the wrongful death of Charles L. Spoo. Each count alleged due care and caution on the part of the plaintiff to whom it pertained, and each count, among other charges of negligently operating the train and negligently maintaining the crossing, included a charge that the defendant carelessly, negligently and improp-

erly failed to maintain the proper lights upon the railway crossing. After the issues had been made up there was a trial by jury. At the close of the plaintiffs' testimony the defendant's motion for a directed verdict in its favor was denied, and at the close of all the testimony, ruling on a like motion was reserved. The jury returned verdicts of $12,500 for Charles E. Langston; $10,000 for the administratrix of the estate of Charles L. Spoo, deceased; $7,500 for Ruth Bargar; and $500 for Rosalie Radicella. A motion by the plaintiffs, for judgment on the verdicts, and a motion by the defendant for judgment in its favor notwithstanding the verdicts, were argued, and the court entered a judgment denying the motion of the plaintiffs, allowing the motion of the defendant, and rendered judgment in favor of the defendant notwithstanding the verdicts, and the cause is here by an appeal from that judgment.

The scope of the inquiry on this review is restricted, as it was in the trial court, to a question of law as to whether, when all the evidence is considered, together with all reasonable inferences drawn therefrom, in its aspect most favorable to the plaintiffs, there is any evidence tending to prove any cause of action stated in the complaint. If there is, the motion should be denied, as the weight and credit to be attached to it in connection with the other facts and circumstances shown are questions of fact for the jury. (*Todd v. S. S. Kresge Co.*, 384 Ill. 524, 527; *Ziraldo v. W. J. Lynch Co.*, 365 Ill. 197; *Kelly v. Chicago City R. Co.*, 283 Ill. 640; *Van Hoorebecke v. Iowa Illinois Gas & Electric Co.*, 324 Ill. App. 88.)

Belvidere street is a two lane concrete pavement running east and west. Appellee's tracks run north and south, crossing Belvidere street about one mile west of Waukegan. U. S. Route 41, a four lane highway, separated in the center by a parking space 20 to 25 feet wide, runs north and south parallel to the railroad about 75 feet west of the tracks, and is known

as "Skokie Highway." Both highways are heavily traveled, and the principal route between Chicago and Waukegan crosses the railroad at the place where the accident occurred. Belvidere street is practically level. When approaching the railroad from the west the view to the north from a point 50 feet west of the tracks is about 4300 feet, and to the south, about a mile. More than 450 feet west of the crossing on the south side of the highway is the usual round metal sign with the letters R. R. outlined in reflector buttons.

There is a set of warning signals maintained by the railroad company on each side of and about 15 feet from the tracks, and both sets of signals operate during and stop at the same time. Each set consists of two signals, one of which is a post with four red warning lights, vertically spaced, which, when in operation, spell the word "STOP." The other signal is a "wig-wag" with a red light in the center and a bell. When the signal is in operation, the wig-wag swings north and south, the red light lights, and the bell rings. The signals are operated by a storage battery, which is replenished by a charger, and their operation is controlled by trippers on the railroad tracks about 2846 feet from each side of the crossing, connected with the electric circuit. If the signals are in working order, they operate on both sides of the tracks whenever a train enters the circuit and until it passes the crossing.

At the corners of the intersection of Belvidere street and Skokie highway there are stop and go signals with red and green lights, maintained by the State highway department. These lights are synchronized with the railroad crossing signals, and were in working order when the Spoo car approached from the west and when the collision occurred. When the stop and go sign at the southwest corner of the intersection shows a green light for traffic from the west on Belvidere street, the railroad signals, if in working order, will not be op-

erating, and this indicates that there is no train approaching or on the crossing. If there is a train approaching or on the crossing, and the railroad signals are operating, the highway signal shows red.

The decedent was a taxicab driver. His familiarity with the crossing and the operation of the signals is shown by testimony that he had traveled Belvidere street many times when there was a train at the crossing and the stop light at the southwest corner of the highway crossing was red and stayed red until the train left the crossing, and that he had used the crossing hundreds of times when the stop light was green and there was no train at the crossing.

Ruth Bargar and Rosalie Radicella were nurses aids at a hospital and had dinner the evening of February second with Huston Hayward and Richard Kremm at a restaurant and then went to a show, after which they all went back to the restaurant, and there met Charles Langston and Herbert Robb. All four young men were sailors from Great Lakes Naval Training Station. They all finally went to Shamrock Grove on Belvidere street, about a quarter of a mile west of the railroad, where they danced to a "juke box" and drank coca-cola. When they were ready to go home, after unsuccessful efforts to procure a taxicab, one of the boys arranged with decedent Spoo, who was eating a sandwich and drinking a cup of coffee, and who was a stranger to all of them, to take them to Waukegan in his car for $1.25. This was Spoo's night off from his regular duty, and he had taken his wife to work on a night shift, driving his own car. The testimony shows that neither Spoo nor any of the party had been drinking anything other than coca-cola and coffee. Charles Langston sat at the right of the driver in the middle of the front seat, and Herbert Robb at his right. Huston Hayward sat on the left in the rear seat, Rosalie Radicella in the middle, Richard Kremm on the right, and Ruth Bargar sat on Huston Hay-

ward's knee, leaning forward with her elbows on the back of the front seat, looking straight ahead through the windshield. Rosalie Radicella was also looking through the windshield. Charles Langston was so mentally incapacitated from his injuries that at the time of the trial he did not remember the accident or of knowing either of the girls. The other three boys were overseas in the navy at the time of the trial.

From the time the party left Shamrock Grove until the accident, the decedent's car did not travel over 20 miles an hour at any time, and the headlights were on "bright" and the windshield wiper was operating. In the fog, lights could be seen for 50 feet, and unlighted objects on the highway could be seen for about 10 feet. When the car reached the highway intersection the green light was showing and none of the railroad warning signals were operating, indicating that no train was approaching or on the crossing. Both girls testified that they saw the green light about 50 feet before they reached it. The car continued on past the green light and when it was about 10 feet from the southbound tracks, the lights of the car picked up the side of a boxcar in the train. The driver of the car swerved it to the right, but collided with the boxcar, and it was thrown south and west.

The train consisted of 83 cars and a caboose, and was moving at a speed estimated by one witness as 20 to 30 miles an hour, and by the locomotive engineer as 40 miles an hour. The automobile struck the 59th car from the engine. The only lights on the train were the headlights on the locomotive and the lights on the caboose. The whistle had been sounded for the crossing and the locomotive bell was ringing. The train crew knew nothing about the accident until they were flagged down 10 or 12 miles south of the crossing, when the conductor found an automobile door stuck in the end of a boxcar, on the south side of which were some scratches which were the only damage to

it. The headlight on the train was about 2400 feet south of the crossing and the lights of the caboose were about 1000 feet north of the crossing when the accident occurred. The testimony shows that the railroad crossing signals were out of working order 10 hours before the accident, about 9 hours before the accident, at the time of the accident, and 20 minutes after the accident. The battery that operates them consists of four 2.1 volt cells. It requires $3\frac{1}{2}$ volts to operate them, and they use .2 of a volt per minute from each cell. The last time that the battery charger was checked was a month before the day of the accident.

Just before the collision, another car, whose driver was familiar with the crossing, was approaching it from the east at 10 or 15 miles an hour with its headlights turned down toward the pavement. When it reached a point about 20 feet east of the train, the driver saw the headlights of the Spoo car shine between the box cars from about 30 feet west of the train, disclosing its presence on the crossing, and he immediately applied his brakes. The headlights of his car did not pick up the train until he was about 10 feet from it, and he stopped only about 4 feet from the train, just as the Spoo car collided with it.

Appellants claim that the railroad warning signals were provided for the purpose of warning against the approach of a train, or the presence of a train on the crossings; that travelers on the highway had a right to rely upon and be guided by the warning usually given by such signals; that the driver and the occupants of the car were in the exercise of due and reasonable care for their safety, and that the negligent failure of appellee to maintain such signals in operating condition lured them into an attempt to cross the railroad, and was the proximate cause of the accident.

Appellee claims that its warning signals were purposed only to warn of the approach of a train toward

the crossing; that it was under no duty to warn travelers on the highway of the presence of a train on the crossing, and that the presence of a train on the crossing was of itself sufficient warning, and that therefore it was not guilty of any negligence; and that the driver and the other occupants of the automobile were guilty of negligence in driving at a speed of 20 miles an hour under the conditions shown, and that such negligence was the proximate cause of the accident.

Appellee relies upon the following cases. *Coleman v. Chicago, B. & Q. Railroad Co.*, 287 Ill. App. 483; *Cash v. New York Cent. R. Co.*, 294 Ill. App. 389; *Fox v. Illinois Cent. R. Co.*, 308 Ill. App. 367; *Marston v. Chicago, B. & Q. R. Co.*, 290 Ill. App. 614; *Fuller v. Peoria & P. U. R. Co.*, 164 Ill. App. 384, and several cases in other jurisdictions where the railroad company had not provided warning signals at the highway crossing, and the holding was that the failure to provide them did not show negligence. These cases are not in point. The claim in the instant case is not predicated upon a failure to provide warning signals, but the claim of appellants is that the proximate cause of the accident was the negligent failure of appellee to maintain in operating condition warning signals already provided, and upon the operation of which travelers on the highway had a right to rely. Neither is the right to recover based on any alleged liability of the railroad company because of any alleged responsibility on its part for the proper maintenance or operation of the stop light at the highway intersection, but is based upon the fact that the railroad signals were out of order and not operating, and that if they had been operating their lights and the light at the highway intersection, synchronized therewith, would have shown red, and that thus, the failure of the railroad signals to operate lured the driver and the other occupants of the car into a reliance that there was no train approaching or on the crossing.

*Simpson v. Pere Marquette R. Co.,* 276 Mich. 653, 268 N. W. 769, also relied upon by appellee, was a case where the driver of the automobile involved in a collision with a railroad car on a crossing, saw a disc warning sign about 500 feet from the crossing, slowed down, and saw a black streak, which was the railroad car, with lights from the village shining above and below it. The court said in that case that the proximate cause of the accident was the negligence of the driver, who did not observe the obvious fact that a railroad car was across the highway. That case has no application here.

In *Chicago Board of Underwriters v. Chicago. & E. I. Ry. Co.,* 44 Ill. App. 253, relied upon by appellee, the driver of an insurance patrol on its way to a fire on a dark, foggy night, saw the lantern on the gate arm at a railroad crossing in a raised position, and drove into the side of a train on the crossing, with such force that one of the horses was killed and the other one was so badly injured that it had to be shot. The Appellate Court affirmed a judgment of the trial court on a verdict for the defendant, and no question was involved concerning the effect of a motion for a directed verdict or for judgment notwithstanding the verdict. That case has no application here.

*Berg v. New York Cent. R. Co.,* 391 Ill. 52, another case relied upon by appellee, does not uphold its contentions. In that case the driver of an automobile traveling 20 to 25 miles an hour on an ice covered pavement, saw the train coming when the automobile was 76 feet from the crossing, which was not protected with signals. He applied his brakes, which held, and tried to turn the automobile to the right to keep off the track, but the car skidded 30 to 35 feet toward the crossing, and he speeded up in an effort to cross ahead of the train, but did not succeed. A judgment for the defendant notwithstanding the verdict was affirmed by the Appellate Court. In affirming the latter, the Supreme Court pointed out that the evidence as to

whether the bell and whistle on the locomotive were sounded was in conflict, and under the motion was resolved in favor of the plaintiff. The court laid down the doctrine that to make a wrongful act the proximate cause of an injury, it must be shown that the events which followed the wrongful act extended in an unbroken sequence from the wrong to the injury, and that if a new cause intervenes which breaks the sequence, so that the injury is traceable only to the intervening act, the second wrongful act becomes the proximate cause. The court said in the opinion: "Since Graves and Berg saw the train when they were yet a distance where the automobile could have been stopped or turned from its course and the collision avoided had it not been for the ice, it is obvious that the two causes, that is, the defendant's wrongful act (failure to sound bell or whistle) and the condition of the street, were wholly unrelated in their operation. They were not concurrent, and there is no basis for an inference that the wrongful act created a condition which made the injury possible," and it was held that the icy condition of the pavement was the superseding, intervening, and proximate cause of the accident. In the case at bar the occupants of the automobile were invited to proceed, by the green stop light and the nonoperation of the railroad signals from a point approximately 200 feet west of the railroad track up to within 10 feet of it, where at a speed of 20 miles an hour it was manifestly impossible to stop or turn the automobile aside so as to avoid a collision, regardless of the condition of the weather, the pavement or the brakes on the automobile. The two cases are not analogous.

In *McGlauflin v. Boston & M. R. Co.*, 230 Mass. 431, 119 N. E. 955, also relied upon by appellee, the automobile was traveling at a speed which made it impossible to stop in less than 60 feet, and the crossing could be seen at a distance of from 250 to 300 feet. One headlight on the car was not burning, and the other

one threw its rays about 40 feet. The negligence charged was the failure of an electric warning gong to ring. Under the Massachusetts statute, warning signals might be required by the railroad commissioners, to warn of the approach of trains, but the statute did not contemplate that such signals were purported to warn against a train on a crossing. The court held that, the railroad company having voluntarily installed the warning bell, without any order or request from the railroad commissioners, assumed no higher duty than that imposed by the statute.

The statutes of this State are not so limited in scope. Section 8 of the Act governing Fencing and Operation of Railroads, (Ill. Rev. Stat. 1945, ch. 114, par. 62; Jones Ill. Stats. Ann. 114.098), provides that at all railroad crossings of highways and streets, the several railroad corporations shall construct and maintain said crossings and the approaches thereto, within their respective rights of way, so that at all times they shall be safe to persons and property. Section 57 of the Public Utilities Act (Ill. Rev. Stat. 1945, ch. 111⅔, par. 61; Jones Ill. Stats. Ann. 112.082), provides, among other things, that the commission shall have power to require every public utility to maintain and operate its plant, equipment and other property in such manner as to promote and safeguard the safety of the public, and to this end to prescribe the installation, use, maintenance and operation of appropriate safety or other devices or appliances at grade crossings. Section 58 gives the commission power to determine and prescribe the manner and the terms of installation, operation, maintenance, use and protection at each such grade crossing; also power to designate crossings which are deemed extra hazardous and to order the installation at all such crossings of appropriate luminous reflecting warning signs, luminous flashing signals, crossing gates illuminated at night, or other protective devices and to

prescribe the division of the cost of installation and subsequent maintenance thereof between the utility and the State or its political subdivisions.

Subsection (b) of sec. 83 of the Motor Vehicle Act (Ill Rev. Stat. 1945, ch. 95½, par. 180 [Jones Ill. Stats. Ann. 85.212, subd. (b)], provides: "The driver of a vehicle shall stop and remain standing and not traverse such a grade crossing when a crossing gate is lowered or when a flagman gives or continues to give a signal of the approach or passage of a train." This indicates that where railroad warning signals are customarily given, a traveler on the highway has a right to rely upon them as to passing trains as well as to approaching trains. Thus, the purpose of the statutes in this State is the general protection of the public at railroad crossings, and is not limited to the approach of trains. The holding in the *McGlauflin* case is not therefore applicable here. Furthermore, in that case the driver of the automobile was clearly guilty of contributory negligence.

In *Schmidt v. Chicago & N. W. R. Co.*, 191 Wis. 184, 210 N. W. 370 and in *Nadasky v. Public Service R. Co.*, 97 N. J. L. 400, 117 Atl. 478, also relied upon by appellee, the court adopted the doctrine of the limited purpose of railroad warning signals to warn only against the approach of trains. Those cases are distinguishable, under the statutes of this State, on the same ground as the *McGlauflin* case. In the *Nadasky* case it is stated that the defendant was organized under the general railroad law, and therefore had the same rights and was subject to the same duties as other railroads organized under that Act. The court refused to give to certain statutes the interpretation contended for by the plaintiff, that the railroad warning signals were purposed to warn against a train on a crossing as well as an approaching train, and held that they bore only on the question of contributory negligence. In the course of the opinion the court

said: ".  .  .  the question is whether it (the defend-
ant) was obliged in the execution of its duty toward
the public to light up the car so that the travelers
upon the highway would see the lights and be warned
of its presence at that point." The *Schmidt* case cites
the *McGlauflin* case and the *Nadasky* case. They are
all in the same category as to statutory construction
of the purpose of railroad crossing warning signals,
but the doctrine announced is not applicable under the
Illinois statutes. In the *Schmidt* case no reason ap-
pears why the plaintiff did not see the train on the
crossing.

*Witherly v. Bangor & A. R. Co.*, 131 Me. 4, 158 Atl.
362, also relied upon by appellee is another case of
the same class as the *McGlauflin* case. The court said
in the opinion: "Wig-wag signals are to protect
against approaching trains. R. S. c. 64, sec. 88." It
appeared in that case that the plaintiff's lights focused
at only 25 feet, which was not in accordance with the
provisions of the statute and that he was traveling at
such a speed that he knocked the flat car from the
rails. In *Reed v. Erie R. Co.*, 134 Ohio St. 31, 15
N. E. (2d) 637, also relied upon by appellee, a coupe
occupied by four persons, at about 10 o'clock p. m.
traveling north at 30 to 35 miles per hour, with its
headlights burning brightly, struck the 42nd car of a
freight train at a country crossing. The highway was
level for a considerable distance from the crossing,
and while on this level stretch, the occupants of the
car saw the train, and the brakes were applied, but
they were unable to stop in time to prevent the acci-
dent. There was a wooden cross arm sign of the type
prescribed by statute on the north side of the railroad,
which could not be seen by travelers on the highway
coming from the south when there was a train on the
track. The highway department had painted two
broad white stripes across the pavement south of the
track, between which were the letters "R.R.," and

nearby on the east side of the highway was the familiar metal disc with a black cross and the letters "R.R." outlined in reflector buttons. All four of the occupants of the coupe resided in the general neighborhood and had frequently used the crossing. The court held that under the circumstances, the defendant was not obliged to provide other means of warning than those prescribed by lawful authority, and that no legal duty rested upon it to carry lights or reflectors on its cars, or to maintain lights, watchmen or gates for the protection of travelers on the highway. It was said in the opinion that the sign prescribed by the statute must be visible from both sides of the crossing, but that when the train arrived and was in the occupancy of the crossing, it afforded an effective danger signal to approaching travelers, and that courts in other jurisdictions had in most instances so held and consequently no additional signs, signals or warnings are required of the railroad company, and negligence cannot be imputed to it because of their absence. That case involves the question of the liability of a railroad company for a failure to provide a statutory signal visible at all times from both sides of the crossing, and its failure to provide other warning signals. It does not relate to a situation, such as the instant case where adequate warning signals were already provided so as to protect travelers on the highway from both directions, but which had become out of operating order by the negligence of the railroad company, and involves no question of reliance upon the operation of any signal. Furthermore, it clearly shows negligence on the part of the plaintiffs as the proximate cause of the accident. The facts and the holding in *Wink v. Western Maryland R. Co.*, 116 Pa. Super. 374, 176 Atl. 760 also relied upon by appellee, are analogous to those in the *Reed* case, and subject to the same distinction.

In *Wink v. Western Maryland R. Co., supra*, the court, citing cases holding that warning signals are

solely for the purpose of warning against an oncoming train, said in the opinion: "Then no other signals or warnings are necessary in the absence of a statute. There is none in this commonwealth imposing such a duty on railroads." This case is also distinguishable on the same ground as the *McGlauflin* case, *supra.*

In *Pennsylvania R. Co. v. Huss*, 96 Ind. App. 71, 180 N. E. 919, another case relied upon by appellee, the same doctrine is announced as in the *Reed* case, *supra*, that is, that the presence of a train on a highway crossing is of itself sufficient warning. In that case it was contended by the plaintiff that a failure to cut a train standing on a crossing, and failure to place any signal or warning, or to station an employee there to warn persons using the highway, was negligence. That case is also distinguishable on the same ground as the *Reed* case. The same is true of *New York Cent. R. Co. v. Casey*, 214 Ind. 464, 14 N. E. (2d) 714; *Trask v. Boston & Maine R. Co.*, 219 Mass. 410, 106 N. E. 1022; *Bowers v. Great Northern R. Co.*, 65 N. D. 384, 259 N. W. 99; *Good v. Atlantic Coast Line R. Co.*, 142 F. (2d) 46, also relied upon by appellee and in *Webb v. Oregon, Washington Railroad & Navigation Co.*, 195 Wash. 155, 80 P. (2d) 409, while the court adopted the rule that the presence of a train on a crossing is sufficient warning, no question of a signal failing to work was involved. In *Southern R. Co. v. Lambert*, 230 Ala. 162, 160 So. 262, the driver of a fire truck which collided at night with a train, testified his stopping distance was 10 to 12 feet. There was a little smoke or fog, but in holding that he was guilty of contributory negligence, the court said that there was no such condition of visibility as to prevent seeing an obstruction on the crossing well beyond the stopping distance.

In *Mallett v. Southern Pac. Co.* (Cal. App.), 68 P. (2d) 281, the court distinguished cases in which the plaintiff relied upon warning signals which operated defectively from cases where the railroad company was not required to provide signals, and held that the

plaintiff in that case was lured into attempting to cross the railroad tracks because of the silence of the wig-wag bell. On page 286 of the opinion the court said: "Whatever may be the purpose of maintaining an automatic wig-wag signal at a railroad crossing, even though it be intended to merely warn travelers of the approach of trains, common justice demands that it shall be so constructed and maintained that it will not lure travelers on the highway into danger. It follows that a company which does maintain such a defective system will be held liable for injuries sustained as the result of these imperfections, regardless of whether the system was designed to warn travelers of the approach of trains rather than to inform them of the danger from stationary cars which block the crossings. It is true that ordinarily the presence of a train which is stationary across a public highway is a sufficient warning of danger to a traveler who sees it, or who by the exercise of ordinary care will be presumed to have seen it. But if, through no fault of the traveler, the train is not observed, and he is injured by relying upon and reasonably acting in compliance with the signals of a system known by the company to be defective, the company will be liable therefor. When railroad crossing signals are maintained by a company, even though the law does not require them to be installed, the public has a right to rely upon the exercise of reasonable care on the part of the railroad company, to keep them in good repair and in efficient working condition." This case answers appellee's suggestion that the record does not show that the railroad warning signals in controversy were ever ordered installed by the Illinois commerce commission. In the instant case the signals had not been checked for a month.

In *Munkel v. Chicago, M., St. P. & P. R. Co.*, 202 Minn. 264, 278 N. W. 41, 44, 45, it is said: "Ordinarily, a railroad company is not negligent in operating or

permitting a train to stand across a public highway either in the day or nighttime. A train on a crossing is visible to drivers on the highway, including automobile drivers whose cars are equipped with lights and who exercise ordinary care. It has often been said that the train itself is an effective and adequate warning. But this is not always so . . . . The evidence justified a finding that it was the custom of defendant to warn travelers when a train was standing across the highway, and that the custom was known to plaintiff's husband, who was the driver of the automobile. The customary warning was not given. A visible warning could have been given. The withdrawal of the customary warning justifies a finding of negligence . . . ."

In *Moore v. Chicago, B. & Q. R. Co.*, 28 F. Supp. 804, 805, the court said: "And the complaint alleges—a most significant fact—that the electric warning signal which the defendant had placed at this crossing for the express purpose of warning travelers on the highway that there was an obstruction at the crossing had been negligently permitted by the defendant to be out of repair, its gong did not sound. The plaintiff knew the signal was at the crossing. He relied upon it and upon its silence. It seems to us that a reasonable man might well say, under all the circumstances alleged, that the defendant beckoned plaintiff into disaster."

To the same effect as these cases are *Greenfield v. Terminal R. Ass'n of St. Louis*, 289 Ill. App. 147; *Oswald v. Grand Trunk Western Ry. Co.*, 283 Ill. App. 86, 91, 92; *Chicago & A. R. Co. v. Blaul*, 175 Ill. 183, 186; *Chicago, St. L. & P. R. Co. v. Hutchinson*, 120 Ill. 587; *Niemi v. Sprague*, 288 Ill. App. 372; *Budds v. Keeshin Motor Exp. Co.*, 326 Ill. App. 59, 61 N. E. (2d) 579. Other analogous cases with similar holdings are *Peri v. Los Angeles Junction R. Co.*, 22 Cal. (2d) 111, 137 P. (2d) 441; *Louisville & N. R. Co. v. Mahoney*, 220 Ky. 30, 294 S. W. 777, 779. In *Niemi v. Sprague*,

*supra,* this court said: ''It must not be lost sight of that the purpose of the signal was not only to warn traffic of the approach of trains, but its nonoperation was to assure the traveler that it was safe to cross.'' The holdings in these cases above mentioned are particularly applicable where an unlighted train occupies a highway crossing at night. The trial court correctly held that appellee was guilty of negligence in not properly maintaining the warning signals.

Whether a plaintiff is guilty of contributory negligence is ordinarily a question of fact for the jury to decide under proper instructions. It becomes a question of law only when the evidence is so clearly insufficient to establish due care that all reasonable minds would reach the conclusion that there was contributory negligence. (*Thomas v. Buchanan,* 357 Ill. 270, 277; *Mueller v. Phelps,* 252 Ill. 630; *Thomason v. Chicago Motor Coach Co.,* 292 Ill. App. 104.) If there is any evidence standing alone, which tends to support the plaintiff's claim, it cannot be said, as a matter of law, that there was no evidence of due care on the part of the deceased. (*Humbert v. Lowden,* 385 Ill. 437.) In that case the court said on page 443 of the opinion: ''Here, for the protection of the public, appellees had erected and maintained crossing gates. If the gates were not lowered this amounted to an invitation to travelers on the highway. It was an assurance, to them, that they could cross over the railroad tracks in safety.'' The court then cites the holding in *Chicago & A. R. Co. v. Pearson,* 184 Ill. 386 to the effect that it is the settled rule of our Supreme Court that it cannot be said, as a matter of law, that a person is in fault in failing to look and listen, if misled without his fault, or where the surroundings may excuse such failure, and that it is a question for the jury to say whether the failure to stop and look, is, or is not, negligence. That doctrine covers the situation in the case at bar. Further, in *Humbert v. Lowden, supra,* on page 445, the

court said that the deceased was not charged with knowledge that the crossing gates would not be operated; that they were installed for that purpose, and it was the duty of appellees to operate them, or to otherwise protect the crossing, and that, "anticipation of negligence on the part of others is not a duty which the law imposes on travelers upon the highway. They have the right to presume that trains will be operated in a proper and skillful manner and that the crossing gates, installed for that purpose, will be operated, so as to prevent them from going on a crossing in front of an approaching train." This court announced substantially the same doctrine in *Niemi v. Sprague,* 288 Ill. App. 372, *supra,* and a similar holding is found in *Pennsylvania R. Co. v. Shindledecker,* 44 F. (2d) 162, 163. While in *Humbert v. Lowden, supra,* the train was approaching the crossing, the duty of the railroad company not to lure a traveler onto a crossing on which a train is standing or passing, is, as we have seen, the same as it is in the case of an approaching train, and of course what is said as to crossing gates applies to warning lights. The duty not to lure a traveler into danger is a wholly different matter from a duty to install warning signals.

In *Surdyk v. Indiana Harbor Belt R. Co.,* 148 F. (2d) 795, where the defendant stressed the point that the plaintiff's conduct in driving his car across the track after he saw the headlight on a train warranted the trial court in finding that he was guilty of contributory negligence, the court quoted from *Humbert v. Lowden, supra,* and from *Oswald v. Grand Trunk Western R. Co.,* 283 Ill. App. 86, *supra*; and *Greenfield v. Terminal R. Ass'n of St. Louis,* 289 Ill. 147, *supra,* which announces the same doctrine as *Humbert v. Lowden,* and held: "Tested by the principles announced in the cases cited, we are impelled to the conclusion that it was a question of fact for the jury to determine whether, under the circumstances here ap-

pearing, defendants were negligent, and if negligent, whether such negligence was the proximate cause of the accident and whether the plaintiff was guilty of contributory negligence." *Grubb v. Illinois Terminal Co.*, 366 Ill. 330, is cited by both parties to this cause. In that case an automobile was approaching the railroad from the south on a bright day at 11:30 o'clock a. m., and ran into the first car of an electric train coming from the west. From a point 50 feet south of the track there was a clear view to the west for a distance of 480 feet. There was a conflict in the evidence as to whether the flasher warning signal was operating, and as to the respective speeds of the train and the automobile. The defendant in that case claimed that the trial court erred in refusing to instruct the jury to find the defendant not guilty. After setting out the Federal rule applicable to situations where warning signals are not working, and discussing holdings in other jurisdictions, the court said at page 337 of the opinion: "No fixed or positive rule applicable to all cases can be announced. It must be remembered that railroads, of necessity, are operated at a high rate of speed in accordance with public demand; that they proceed on their own right of way and that the mechanical devices installed to warn the public may get out of order. We believe the sound rule to be, that although the fact that a signal system is not operating is an indication to the traveler that it is safe to cross, nevertheless he is not thereby released of the duty of using reasonable care for his own safety. Where the surroundings at a particular crossing give to the traveler an unobstructed view of a dangerous highway crossing he is not justified in failing to look, or, on looking, failing to see an approaching train, merely acting upon an assumption that no train is approaching. The law will not tolerate the absurdity of permitting one to testify that he looked and did not see, when, had he properly exercised his sight, he would have

seen. . . . Though there is much evidence of contributory negligence in the record we are unable to say that there is no evidence, which, taken with all reasonable intendments in plaintiff's favor, tends to support her claim, and so do not find contributory negligence on the part of appellee as a matter of law.'' The judgment in favor of the plaintiff, affirmed by the Appellate Court, was reversed because of the giving of erroneous instructions and the admission of incompetent evidence, not pertinent here, and the cause was remanded for a new trial. In the instant case the testimony on behalf of appellants is much stronger in their favor than it was in favor of the plaintiff in the *Grubb* case, or in *Humbert v. Lowden, supra,* and the decisions in those cases clearly show that the trial court here erred in finding, as a matter of law, that the driver of the automobile was guilty of negligence which was the proximate cause of the accident. The fact that the two girls testified that they did not see the advance warning sign, which was more than 450 feet west of the railroad, does not show that they were not in the exercise of due care when they both observed the green intersection light 50 feet before they reached it, and saw there were no railroad signals operating. So, too, the claim that the occupants of the automobile, other than the driver, were his guests, and that their status must be determined by the rules of law applicable to guests, is devoid of merit. The testimony conclusively shows without contradiction that they were passengers for hire, and the law invoked is not applicable. (*Connett v. Winget,* 374 Ill. 531.)

Appellee claims that the stop light at the intersection was not its responsibility as it was maintained by the State. This is true but that fact alone is not determinative of the issue here. The testimony shows that this stop light was in working order, and that if the railroad signals had been in operating condition, the stop light would have shown red, and appellee cannot

escape the effect of the invitation and sense of security given by the stop light showing green when its failure to show red was caused by appellee's negligent failure to maintain its own signals in working condition, nor can it escape the effect of the additional invitation and sense of security given by the failure of its own signals to operate. In many of the cases relied upon by appellee, the negligence charged was a failure to provide warning signals, and no question of the failure of an established warning signal to operate on account of the defendant's negligence, was involved.

In the instant case the Spoo's car traveled only 10 feet from the time the train was first sighted until the crash. There is no testimony as to the condition of the brakes on the Spoo's car. Appellee urges that the failure of appellants to offer evidence on this point must be construed most strongly against them, citing *Pipal v. Grand Trunk Western Ry. Co.,* 341 Ill. 320, 327; *Prudential Ins. Co. v. Bass,* 357 Ill. 72, 76; *Kankakee Federal Savings & Loan Ass'n v. Arnove,* 318 Ill. App. 261, 268. In the first case cited the principle was applied where there was a motion for a new trial, and the other two cases were appeals in chancery cases. We are cited to no case, and we know of none, where the principle is applied under a motion for judgment notwithstanding the verdict. It is obvious that a car with brakes in good condition could not stop within the 10 feet mentioned while traveling 20 miles an hour, hence, proof that its brakes were in good condition was not essential to make a prima facie case. Under the rule applicable to a motion for judgment notwithstanding the verdict, no presumption can be indulged that the brakes were not in good condition, and, under the rule, when all the evidence is considered in its aspect most favorable to the plaintiff, if there is any evidence tending to prove any cause of action the motion should be denied.

Appellee also claims that there is no affirmative evidence of due care on the part of the driver or the other

occupants of the car; that it is a necessary element for recovery; and invokes the familiar rule, announced in *Moudy v. New York, C. & St. L. R. Co.*, 385 Ill. 446, 452; *Dee v. City of Peru*, 343 Ill. 36, 41, and several other cases, that one approaching a railroad crossing must do so with the same amount of care commensurate with the known danger, but in the case at bar it is obvious that when the light at the intersection showed green, and the railroad signals were not in operation, there was, to the occupants of the car no known danger but, on the contrary, they were doubly advised to the contrary, and by the fault of appellee.

Due, ordinary, and reasonable care are convertible terms, and mean that degree of care which ordinarily prudent persons would exercise under the same or similar conditions. (*Roberts v. Chicago City R. Co.*, 262 Ill. 228, 233.) From the circumstances in evidence due care on the part of the driver and the occupants of the car may be inferred. (*Chicago & A. R. Co. v. Carey*, 115 Ill. 115, 119; *North Chicago St. R. Co. v. Rodert*, 203 Ill. 413, 415; *Berg v. New York Cent. R. Co.*, 323 Ill. App. 221, 231.) The claim, stressed by appellee, that none of the occupants of the car did or said anything, does not show contributory negligence as a matter of law. (*Berg v. New York Cent. R. Co., supra.*) Furthermore, it does not appear that there was anything apparent to any of them that might prompt the doing or saying of anything to avoid the accident, or that indicated any negligence on the part of the driver. In such a case negligence of the driver, if any, cannot be imputed to the other occupants of the car. (*Crowe Name Plate & Manufacturing Co. v. Dammerich*, 279 Ill. App. 103; *Lauer v. Elgin, J. & E. R. Co.*, 305 Ill. App. 487; *Reitz v. Yellow Cab Co.*, 248 Ill. App. 287, 291.)

Under all the facts and circumstances in evidence, we believe that the questions of whether the proximate cause of the accident was the negligence of appellee, and whether the driver and the other occu-

pants of the car were in the exercise of due care or were guilty of negligence which was the proximate cause of the accident, were questions of fact for the jury. (*Humbert v. Lowden, supra; Grubb v. Illinois Terminal Co., supra; Chicago City R. Co. v. Fennimore*, 199 Ill. 9, 17, 18; *North Chicago St. R. Co. v. Brown*, 178 Ill. 187, 189; *Budds v. Keeshin Motor Exp. Co., supra; Miller v. Burch*, 254 Ill. App. 387, 392, 393; *Carroll v. Krause*, 280 Ill. App. 52; *Moyer v. Vaughan's Seed Store*, 242 Ill. App. 308.)

Appellee made no motion for a new trial. Under Supreme Court Rule 22, this is a waiver of the right to a new trial, and there is no necessity to remand the cause. The judgment for the defendant notwithstanding the verdict is reversed, and judgment on the verdicts of $12,500 for Charles E. Langston; $10,000 for Alice E. Spoo, as administratrix of the estate of Charles L. Spoo, deceased; $7,500 for Ruth Bargar; and $500 for Rosalie Radicella is entered in this court. (*Todd v. S. S. Kresge Co.*, 384 Ill. 524, 529; *Schwickrath v. Lowden*, 317 Ill. App. 431.)

*Judgment reversed with judgment here.*