RADEMACHER *v.* DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY CO.

1. NEGLIGENCE—RAILROADS—ESCAPING STEAM—CROSSINGS.
   Evidence that a quantity of steam was permitted to escape from an engine which started to move while decedent's horse was crossing the track of the defendant, and caused a loud whistling or hissing, which, with the sight of the escaping steam, frightened the horse so that it backed and the rig was struck by the engine, raises a question of fact as to the negligence of defendant.

2. SAME—CONTRIBUTORY NEGLIGENCE—RAILROAD CROSSING.
   It was a question for the jury to say whether or not the decedent was guilty of contributory negligence in crossing the track after the engine, which was standing until she reached the track, had commenced to move.

3. SAME—TRIAL — INSTRUCTION TO JURY — GATES OPEN AS ELEMENT OF NEGLIGENCE.

> The trial court was not in error in permitting the jury to consider the fact that the crossing gates were up, in their determination of the questions of negligence and of contributory negligence.[1]

Error to Kent; McDonald, J. Submitted October 7, 1909. (Docket No. 21.) Decided November 5, 1909.

Case by Joseph P. Rademacher, administrator of the estate of Mary Konkle, deceased, against the Detroit, Grand Haven & Milwaukee Railway Company for the negligent killing of plaintiff's intestate. A judgment for plaintiff is reviewed by defendant on writ of error. Affirmed.

*Harrison Geer* (*W. K. Williams*, of counsel), for appellant.

*Lombard & Hext*, for appellee.

MONTGOMERY, J. The defendant's local freight train No. 66 stood upon the track of the defendant about three car lengths west of Broadway street crossing in the city of Grand Rapids. The deceased was riding with Mrs. Rademacher and Mrs. Josephine Schmidt in an open seated buggy. The horse was being driven by Mrs. Rademacher, and was gentle. Broadway crosses defendant's track at an angle; the distance between the rails—that is, the traveled portion of the street—being 11 feet. The street is wide and level between defendant's track and the street car track. Gates are maintained at Broadway.

As the driver approached Broadway with her horse, she discovered that the gates were up, and saw the engine standing still at the point stated. Mrs. Rademacher testifies: That after she looked and saw that the train was standing still she drove on. The horse was walking.

---

[1] As to duty of traveler going upon railroad crossing when gates are open, see note to *Koch* v. *Southern Cal. R. Co.* (Cal.), 4 L. R. A. (N. S.) 521.

"I drove toward the railroad track. I wanted to drive across to get to my place. I paid attention to the engine. I was looking at the engine and watching my horse. I noticed the gates as I went toward the track. I drove on the track, and, when the horse's head was just to the rail, then I saw the train start. I thought I had plenty of time to go over, and that it was safer for me to go over than it would be to turn around. My horse went over the track, and the train came faster and faster towards me, but I was thinking all the time that it would go back again. I thought it was a switching train, because I did not hear any whistle and no bell ringing, and all at once it was over here to the railing and the steam was coming out on both sides. This scared my horse, and she stopped and backed around, and I could not make her go, and that is all I can remember."

The case was submitted to the jury, with the result of a verdict for the plaintiff. The case is brought here for review, and four errors are relied upon:

*First.* That the circuit judge erred in submitting to the jury the question of negligence in permitting the escape of steam from the engine.

*Second.* That the plaintiff's decedent was guilty of contributory negligence, as a matter of law, and that it was therefore error to submit the case to the jury.

*Third.* That the fact that the crossing gates had not been lowered was not the proximate cause of the injury.

*Fourth.* That the judge erred in his instructions to the jury, the claim being that the instructions were inconsistent and contradictory as bearing upon the effect of the failure to lower the gates.

It is the contention of the defendant that there is no testimony that raises a question of fact for the jury to say whether defendant was negligent in causing or permitting the engine to emit steam, for the reason that there was no proof that there was an unusual or unnecessary amount of steam emitted. We do not so read the record. Mrs. Rademacher testified that, when the horse got over the track, he was scared. "The steam blew off, the steam on both sides, and that scared the horse." Mr. Tanner,

witness for the plaintiff, testified relative to the steam cocks:

"Their purpose is to let the flush off from the wings of the cylinder."

In answer to the question: "When steam is let off at that point, in what way does it escape?" he replied:

"It escapes through the steam cocks at the lower side of the cylinder at each side of the engine.

"*Q.* And can it escape through there excepting when the steam is turned on?

"*A.* It cannot, sir. I observed this engine as it started up. I don't think that when it first started there was any steam escaping from the steam cocks. I later discovered steam escaping. The engine was about half way between the starting point and the crossing when I discovered steam escaping from the steam cocks. The steam made a whistling and sissing noise. It was somewhat loud."

The testimony of defendant's witness was that steam of no consequence would escape from cylinder cocks unless they were open; that this would be accomplished from the inside of the engine cab; that, if it was desired to get rid of the condensed water, the steam cocks would be opened, and this would let the steam and water escape; that the engine was working hard and made quite a noise. It is true that this witness testified that the steam cocks were not open, but we think it was a question for the jury as to whether they were or not. It was also a question for the jury as to whether, in a situation in which this horse was at the time—as it appears that the steam emitted would come out directly in front of the horse and be likely to cause fright—it was a negligent act. See *Geveke* v. *Railroad Co.*, 57 Mich. 589 (24 N. W. 675); *Hinchman* v. *Railroad Co.*, 136 Mich. 341 (99 N. W. 277, 65 L. R. A. 553); *Foster* v. *East Jordan Lumber Co.*, 141 Mich. 316 (104 N. W. 617).

We think it very clear that it cannot be said, as a matter of law, that the deceased was guilty of contributory negligence. When she approached this crossing, she found the

gates open. She saw an engine at a distance standing still. There was nothing in this situation to give warning that there was danger for her to attempt to pass, in the absence of any signal or warning of danger. The cases cited in which it was held by this court that a railroad track is a warning of danger, and that one may not calculate chances in driving in front of a moving train, are not in point. This engine was standing still up to the time that Mrs. Rademacher had reached the track, according to her testimony, and, when the engine started, it was altogether probable that the safest course for her to pursue was to go ahead. At least, this was a question for the jury. It was also for the jury to say as to whether, in the absence of the emission of steam at that time, the horse would not have got safely over.

It is suggested that the fact that the crossing gates had not been lowered was, under the plaintiff's theory, not the proximate cause, and in the same connection error is assigned upon the instructions relating to this fact, as follows:

" Another negligent act complained of is that defendant failed to lower its safety gates as the engine was started and about to proceed over the crossing. This is one of defendant's duties. You will remember the testimony, and, if you find that the gates were not lowered you may consider it as bearing on the matter of negligence, both the alleged negligence of the defendant and contributory negligence.

"Now, something has been said by counsel that that was immaterial whether the gates were up or down, under the circumstances of this case; but, of course, if having an unobstructed view of the engine she saw it, or should have seen it moving towards her, or towards the crossing before she went upon the track, it would make no difference whether the gates were up or down. She would have no right under such circumstances to attempt to cross. If the engine was standing still, the position of the gates would be immaterial, for, if the engine was standing still and the gates were up, she would have reason to believe there would be no danger in making the crossing."

These two contentions may be considered together. It is evident that the fact that the gates were not down had some influence, as it naturally would, with the driver, Mrs. Rademacher, in determining whether it was safe to proceed. Unquestionably had the engine been in motion, and the plaintiff discovered the fact before driving upon the track, it might well be said that the fact that the crossing gates were not down would not be the proximate cause of the injury. But it was one of the conditions which existed, and which, taken in connection with the fact that the engine was standing still, gave her assurance of safety which induced her to drive upon the track. Nor do we think the jury could have been misled or confused by the instructions upon this branch of the case.

We find no reversible error, and the judgment will be affirmed.

BLAIR, C. J., and GRANT, OSTRANDER, and HOOKER, JJ., concurred.