Goldie Greenfield, Appellee, v. Terminal Railroad
Association of St. Louis, Appellant.

148

Opinion filed March 4, 1937.

KRAMER, CAMPBELL, COSTELLO & WIECHERT, of East St. Louis, for appellant; J. L. HOWELL, of counsel.

PHILIP G. LISTEMAN and BEASLEY & ZULLEY, all of East St. Louis, for appellee.

MR. JUSTICE EDWARDS delivered the opinion of the court.

By this appeal defendant below seeks to reverse a judgment for $2,500 which plaintiff recovered against it in the city court of East St. Louis. The action was to recover damages which plaintiff claims to have sustained when a Chevrolet coupe, in which she was riding as a guest with three other persons, collided with an engine of defendant on the tracks of the latter where they cross Missouri avenue in the city of East St. Louis; the accident occurring shortly after midnight on November 7, 1935.

The complaint charged that the crossing in question was a dangerous and hazardous place; that defendant, in recognition of such fact, had installed a system of gates at the crossing several years before the accident, and had maintained same from the date of installation to the time of the occurrence; that the aforesaid facts were known to the plaintiff and the public generally, and that while crossing such tracks, with all due care on her part, she was struck by the engine of defendant, due to the fact, as alleged, that defendant at the time had negligently, and in disregard of its duty, failed to lower the gates at such crossing as its engine approached, in consequence of which plaintiff sustained divers hurts and injuries.

Defendant answered, admitting ownership of the tracks, and that it from time to time operated trains thereon, but denied all other allegations of the complaint. The defense claims that the gates were down at the time of the accident, and that plaintiff was guilty of contributory negligence.

It appears from the evidence that the gates were the usual appliances installed at such places, on each side of the tracks there being two flexible wooden bars which extended from the sidewalk toward the center of the street, with a gap of about 18 inches between the ends of the bars when they were lowered. At night, on each, was hung a lighted lantern with a red

light burning. The bars when down were about the height of the top of the radiator of a Chevrolet coupe.

Three of the occupants of the car testified that the gates were up when they entered the crossing, and not lowered at any time. Three other and disinterested persons deposed that the gates were up either at the time of the accident or immediately thereafter. As opposed to this the crossing watchman stated that he lowered the gates and that they remained down until after the collision, and that the car ran between the gates and struck the engine. The fireman testified that he saw the coupe run through the gates, and that they were down after the collision. He further stated that he examined the gates about 10 minutes after the accident and that no part of them was broken, nor did he find any mark upon them. The watchman's testimony was that the machine went through the two gates, without breaking either, and that it did not knock off the lighted lantern attached to the gate. The witness stated that he could not see any paint gone from the bars, and that if anything had been wrong with the arms of the gates he guessed he would have noticed it. He further testified that there were some black spots back from the tips of the gates.

Whether the gates were up or down at the time was a question of fact; six witnesses testifying that they were up, and two that they were down.

In addition, the circumstances seem to dispute the testimony of the watchman and fireman. That a car, speeding against the gates at the rate of 40 miles an hour, even though at the ends of the bars where, conceivably, owing to the flexible character of the wood of which they were made, it might have passed through without breaking the arms, should not scrape off any of the white paint on same, the car being probably four or five feet wide and the aperture between the ends of the gates 18 inches, seems improbable, and that the

lighted lanterns hanging on the arms should not have been knocked off or broken, seems almost unbelievable. Common sense dictates that under such circumstances there would have been some damage done to the bars. The fact that defendant's witnesses agree that no injury was thereby done to the gates is strong proof that they were not down and not struck by the coupe. Upon this record of proof we think the jury were warranted in finding that the gates were not lowered at the time of and just prior to the collision.

It appears undisputed that such gates had been maintained for a period of years prior to the accident, and that such fact was known to the plaintiff and to the public generally. When a railroad assumes the duty of maintaining gates or a flagman at the crossing of its tracks with a public street or highway, it is bound to discharge the duty with due care, whether or not it was obligated so to do by statute or ordinance, and for a failure to perform such duty, which proximately causes injury to a person, is liable in damages. *Chicago & A. Ry. Co. v. Wright,* 120 Ill. App. 218; *Wolcott v. New York & L. B. R. Co.,* 68 N. J. L. 421, 53 Atl. 297; *State v. Boston & M. R. Co.,* 80 Me. 430, 15 Atl. 36; 52 Corpus Juris, p. 205, sec. 1793. We think the proof tended to establish the fact that defendant assumed this duty, that it failed to perform it with due care, and that such failure was the proximate cause of plaintiff's injury.

It is also contended that plaintiff has not, as required by law, shown herself to have been free from negligence which proximately contributed to her injury, and that ordinary care required that she look and listen, before crossing the track, for the purpose of ascertaining whether or not a train was approaching, and not to advance upon the track without so looking and listening.

The law is well established that a person who is familiar with the custom of a railroad company to close gates maintained at its crossing with a public street or highway, when a train is about to pass, and who is acquainted with the location and surroundings, has a right to rely upon the open gates as a notice to him that no train is close at hand, and as an invitation to him to make the crossing in safety, so far as an approaching train is concerned. *Chicago & E. I. R. Co. v. Schmitz,* 211 Ill. 446; *Carlin v. Michigan Cent. R. Co.,* 189 Ill. App. 23; *Wabash Ry. Co. v. Walczak,* 49 F. (2d) 763; *Lockridge v. Minneapolis & St. L. Ry. Co.,* 161 Iowa 74, 140 N. W. 834; *Flygen v. Chicago, M. & St. P. Ry. Co.,* 115 Minn. 197, 132 N. W. 10; *Rademacher v. Detroit, G. H. & M. Ry. Co.,* 158 Mich. 552, 123 N. W. 45; *Hendrickson v. West Jersey & S. S. R. Co.,* 102 N. J. L. 310, 131 Atl. 875; *Johnson v. Director General of Railroads,* 278 Pa. 491, 123 Atl. 484; *Palmer v. New York Cent. R. Co.,* 112 N. Y. 234, 19 N. E. 678; *Cleveland, C., C. & St. L. Ry. Co. v. Schneider,* 45 Ohio 678, 17 N. E. 321. Such person cannot be charged with negligence in so doing, if, in crossing, he exercises ordinary care for his own safety. *Evansville & T. H. R. Co. v. Berndt,* 172 Ind. 697, 88 N. E. 612.

Whether or not plaintiff looked and listened is not alone decisive of the question, in situations where there are facts which excuse the performance of that duty, and it is a question of fact for a jury's determination whether in view of all the surrounding circumstances a failure to look and listen renders the injured person guilty of negligence, or whether such party is relieved by the circumstances from the obligation to look and listen. *Chicago & E. I. R. Co. v. Schmitz, supra; Chicago & A. R. Co. v. Pearson,* 184 Ill. 386. Hence it was for the jury to find, from all the attendant circumstances, whether the failure of defendant to lower its gates at the approach of the

train was a fact excusing plaintiff from looking and listening before she entered the defendant's right of way, if she, in fact, so failed to look and listen. Nor would the negligence of the driver in that respect be imputed to the plaintiff as his guest, who was only held to exercise due care for her own safety. *Thomas v. Buchanan*, 357 Ill. 270.

It is also claimed that the fact, as the evidence shows, that four persons were riding upon the single seat of the automobile, in violation of Ill. State Bar Stats. 1935, ch. 121, ¶ 368; Jones Ill. Stats. Ann. 85.222 (sec. 190, ch. 95½, Smith-Hurd R. S. 1935), was negligence upon plaintiff's part. Where a person, in such situation, violates a provision of a statute or ordinance, such fact is only prima facie evidence of negligence; that is, only one of the facts and circumstances to be considered in order to determine whether such person is in fact guilty of negligence. *Miller v. Burch*, 254 Ill. App. 387; *Commonwealth Elec. Co. v. Rose*, 214 Ill. 545. We think the question of whether plaintiff was guilty of negligence which proximately contributed to the injury was fairly submitted to the jury, as one of fact, and that we would not be justified in interfering with their finding.

Defendant tendered an instruction which was refused by the court. This would have told the jury that where a locomotive and an automobile are each approaching a railway crossing at the same time, and those in charge of the train and the occupants of the automobile are each aware of the approach of the other, it is not the duty of the operators of the train to stop the same, but it is the obligation of the traveler in the automobile to stop his vehicle and not attempt to pass in front of the advancing train; and that in this case even though those in control of the train saw the automobile approaching the crossing in ques-

tion, yet they had the right to assume that the motor vehicle would stop and allow the train to pass.

The engineer testified that he was on the opposite side of the engine from the one with which the car collided, and that he did not see the auto until the crash. The fireman stated that as they got into the crossing intersection he looked to the left and saw the on-coming car. On cross-examination he said, "the first thing I saw of the automobile was the machine going through the crossing gates."

It is thus seen that the fireman did not see the automobile until the train was at or in Missouri avenue, or, as he says, "when the machine was going through the crossing gates," at the rate, as he testified, of 40 miles per hour. If his first glimpse of the auto was when it was crashing the gates it was when the car, instead of approaching the crossing, was in fact at or in it. We do not think there is any evidence that the train crew saw the automobile before it reached the crossing or was approaching it, and there is no evidence that any one of the occupants of the car saw the approaching engine. True, it would have satisfied the rule if they "by reasonable care could have ascertained that fact." *Grinestaff v. New York Cent. R. Co.,* 257 Ill. App. 301. However, the instruction, as tendered, limited the jury's consideration to actual knowledge, of which there was no evidence. It was therefore rightfully refused as not being based upon the evidence. *Bailey v. Babcock,* 352 Ill. 231, 236.

For which reasons we think the court properly overruled defendant's motions for a directed verdict, judgment notwithstanding the verdict, and for a new trial, and that the judgment, upon the record, is right.

*Judgment affirmed.*