(No. 30091.—

CHARLES E. LANGSTON *et al.*, Appellees, *vs.* CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Appellant.

*Opinion filed Sept. 18, 1947—Rehearing denied November 17, 1947.*

WILSON, J., dissenting.

NYE F. MOREHOUSE, LOWELL HASTINGS, and JAMES B. O'SHAUGHNESSY, (JOHN L. DAVIDSON, JR., of counsel,) all of Chicago, for appellant.

SNYDER & CLARKE, (GERALD C. SNYDER, of counsel,) both of Waukegan, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

On February 3, 1944, about 2:30 A.M., an automobile driven by Charles L. Spoo, deceased, in which appellees, Charles E. Langston, Ruth Bargar and Rosalie Radicella, and three other persons were riding, ran into the side of a freight train of the Chicago and North Western Railway Company, appellant, which was proceeding south across Belvidere road. Spoo was killed, and the appellees above named injured.

The amended and supplemental complaint consisted of four general negligence counts, the first three of which alleged personal injuries to three of the above-named plaintiffs, and the fourth count was based upon the wrongful death of Charles L. Spoo. Each count alleged due care upon the part of the plaintiff to whom it pertained, and each count, among other charges of negligent operation of the train and of negligent maintenance of the crossing, included a charge that the defendant carelessly and improperly failed to maintain the proper lights upon the railroad crossing.

At the close of the plaintiffs' evidence, defendant's motion for the directing of a verdict was denied, and at the close of all of the testimony a ruling upon a like motion was reserved. The jury returned verdicts of $12,500 for Charles E. Langston, $10,000 for the administratrix of the estate of Charles L. Spoo; $7500 for Ruth Bargar,

and $500 for Rosalie Radicella. A motion was made by plaintiffs for judgments upon the verdicts, and a motion by the defendant for a judgment in its favor notwithstanding the verdicts. The court entered an order denying the motions of the plaintiffs, and allowing the motion of the defendant, and rendered a judgment in favor of the defendant, notwithstanding the verdicts. The cause was appealed to the Appellate Court for the Second District by plaintiffs, and the judgments of the circuit court of Lake County were reversed, and judgment entered for the respective plaintiffs upon the verdicts returned by the jury. There being no motion for a new trial under Rule 22, a motion for such purpose was waived. We have allowed an appeal to this court.

The accident happened at the crossing of Belvidere road across the tracks of the defendant, about one mile west of Waukegan. At that point appellant's railroad runs north and south. It is paralleled by U. S. Route 41, a four-lane highway separated in the center by a parking space 20 feet or more wide, lying about 75 feet west of the tracks, and known as the Skokie highway. Both highway are heavily traveled, and both the Skokie highway and the railroad are crossed by the Belvidere road at practically right angles. When approaching the railroad from the west on Belvidere road there is a clear view of over half a mile in each direction from a point 50 feet west of the tracks. There is also a reflector sign on the south side of Belvidere road 450 feet west of the crossing. There is a set of warning signals maintained on each side of and about 15 feet from the railroad tracks, and both sets of signals operate, during a stop, at the same time. Each set consists of two signals, one of which is a post with four red warning lights vertically spaced, which when in operation spell the word "stop." The other signal is a wigwag with a red light in the center and a bell. When the signal is in operation the wigwag swings, the red lights

come on and the bell rings. The signals are operated by a battery, and their operation is controlled by trippers on the railroad tracks. If the signals are in working order they operate on both sides of the track, giving warning to travelers coming both west and east. At the corners of the intersection of Belvidere road and Skokie highway there are stop-and-go signals with red and green lights. These lights are synchronized with the railroad-crossing signals, and were in working order when the Spoo car approached from the west, and when the collision occurred. When the stop-and-go signal at the southwest corner of the intersection of Belvidere and Skokie shows a green light for traffic from the west, the railroad signals, if in working order, will not be operating, and this indicates there is no train approaching or on the crossing. If there is a train approaching or on the crossing and the railroad signals are operating, the highway signal shows red.

On the evening in question Spoo was employed by the appellees and three other young men, to be transported from a night club to Waukegan. The evidence is clear that they had not been drinking, but had been dancing and eating sandwiches. The party left in the Spoo car, traveled about 20 miles an hour, with the headlights on. The night was foggy; lights could be seen for about 50 feet, and unlighted objects about 10 feet. When the automobile reached the intersection, the green light was showing and none of the railroad warning signs were operating, which indicated there was no train approaching or on the crossing. Spoo was familiar with this crossing, and with the method in which the lights were operated at that place. The evidence shows the railroad crossing lights were not in operation. As the car crossed Skokie highway with the green light it came within about 10 feet of the south bound tracks, when the movement of the train was first observed. Spoo was unable to stop the car and ran into the side of the train, with the results above indicated.

The appellant asserts that the case presents the simple question,—Does a railroad under the law of Illinois owe a duty to a traveler on a highway to warn of the presence of a train passing over a grade crossing? On the other hand, the appellees assert that the true question involved is: (a) whether the failure of the defendant's signals was an invitation to cross the tracks with an implied assurance that it could be done with safety; and (b) whether the defendant was negligent in failing to properly maintain the signals at the time of the accident.

Certain questions of fact mentioned, but not argued at length, are settled by the decision of the Appellate Court. As to the questions whether the proximate cause of the accident was the failure of the crossing signals to work, and whether the driver and other occupants of the car were in the exercise of due care, or were guilty of negligence which was the proximate cause of the accident, these were questions of fact which are settled by the decision of the Appellate Court, and which cannot be considered here. (*Berg* v. *New York Central Railroad Co.* 391 Ill. 52; *Ziraldo* v. *W. J. Lynch Co.* 365 Ill. 197.) That leaves for consideration the sole question whether, as a matter of law, there was no evidence of negligence upon the part of appellant, to be considered by the jury in determining what was the proximate cause of the accident.

It seems to us the true question presented is whether, under the particular circumstances, a failure of the railroad crossing signals to indicate danger, while the device to the west of the highway indicated safety, constitutes negligence.

The evidence shows that, if the railroad signals were in good operating condition, the highway signals to the west of the Skokie highway would be red if a train were on or approaching the crossing, and the traveler would be warned not to cross Skokie highway or go upon the intervening space between the highway and the railroad, or attempt to cross the railroad. The testimony also shows

that these signals also operated while the train was crossing the tracks, and not merely while it was approaching the tracks.

Both sides have cited a great number of cases, most of which throw no particular light upon the case. There is that series of cases of the Appellate Court of this State which held, in subtance, that the purpose of a signal at a grade crossing of a railroad is to warn of the approach of a train, and not for the purpose of warning that the train is on the crossing; (*Coleman* v. *Chicago, Burlington and Quincy Railroad Co.* 287 Ill. App. 483; *Cash* v. *New York Central Railroad Co.* 294 Ill. App. 389; *Fox* v. *Illinois Central Railroad Co.* 308 Ill. App. 367; *Marston* v. *Chicago, Burlington and Quincy Railroad Co.* 290 Ill. App. 614,) and also cases that the presence of a train upon a railroad crossing is generally in itself a warning of its presence. (*Coleman* v. *Chicago, Burlington and Quincy Railroad Co.* 287 Ill. App. 483; *Cash* v. *New York Central Railroad Co.* 294 Ill. App. 389; *Note,* 161 A.L.R. 126.) The Appellate Court properly held that these cases were not in point upon the question involved in this case.

In this particular case the appellant, through some arrangement with the road authorities of the State of Illinois, provided a means of warning by which, if the crossing was occupied or a train was approaching, a danger signal would be displayed on the west side of the Skokie highway, a point at least 150 or 200 feet distant. And, on the other hand, if the crossing were clear and no train was approaching, the signals on the west of the Skokie highway would be green, indicating a person could cross with safety. These signals were well known to the driver of the car.

In *Humbert* v. *Lowden,* 385 Ill. 437, which involved the maintenance of crossing gates, we said: "If the gates were not lowered this amounted to an invitation to travelers on the highway. It was an assurance, to them, that

they could cross over the roalroad tracks in safety ."· And, in the same case, we said that the plaintiff in that case could not be charged with knowledge that the crossing gates would not be operated, and that anticipation of negligence upon the part of others is not a duty which the law imposes upon travelers upon a highway. There is no· difference in principle as to the duty pertaining to operating a crossing gate, or crossing bells, or lights. The purpose in each instance is to prevent accidents at crossings.

It has likewise been held that when railroad crossing signals are maintained by a company, even though the law does not require them to be installed, the public has a right to rely. upon the railroad company to keep the same in an efficient working condition. (*Chicago and Alton Railroad Co.* v. *Blaul,* 175 Ill. 183; *Chicago, St. Louis and Pittsburg Railroad Co.* v. *Hutchinson,* 120 Ill. 587; *Greenfield* v. *Terminal Railroad· Association of St. Louis,* 289 Ill. App. 147; *Oswald* v. *Grand Trunk Western Railway Co.* 283 Ill. App. 86; *Niemi* v. *Sprague,* 288 Ill. App. 372; *Mallett* v. *Southern Pacific Railroad Co.* 20 Cal. App. 2d. 500, 68 Pac. 2d. 281.) To the same effect are *Munkel* v. *Chicago, Milwaukee, St. Paul and Pacific Railroad Co.* 202 Minn. 264, 278 N.W. 41; *Moore* v. *Chicago, Burlington and Quincy Railroad Co.* 28 Fed. Supp. 804; *Pennsylvania Railroad Co.* v. *Shindledecker,* 44 Fed. 2d. 162. This principle has been applied most frequently in cases where the traveler was familiar with the means of warning provided by the railroad company, and such means had failed to properly operate.

It is apparent that the crossing involved in this case was an especially dangerous one, owing to the fact a heavily traveled State highway had to be crossed, and then a short space between the highway and a railroad track to be crossed, and the possibility of a traveler being trapped in a place of danger, if not warned. The language used in the case of *Niemi* v. *Sprague,* 288 Ill. App.

372, above cited, seems appropriate to the present situation: "It must not be lost sight of that the purpose of this signal was not only to warn traffic of the approach of trains, but its nonoperation was to assure the traveler that it was safe to cross."

The appellant claims as a matter of law that the railroad company does not owe the traveling public a duty under the law to give warning of a train upon the crossing. We think this may, as a general principle, be admitted to be true but that it does not apply to the present situation. The defendant in this case undertook, by permitting the synchronizing of the signals at the Skokie highway crossing and at the railroad crossing to invite the public to cross its tracks when the lights were green to the west of the Skokie highway, and to warn the public that it should not cross the tracks when the lights to the west of the Skokie highway were red. The evidence discloses a case where there was an invitation to cross, with an implied assurance of safety. This is quite different from the ordinary case where the train is, in itself, warning and no invitation is made by the railroad company.

It appearing in this case that there are facts and circumstances in evidence that the appellant undertook to furnish a certain method of warning the public when a train was approaching or on the crossing, and the driver of the car being familiar with this method of warning, it cannot be said, under the facts, that as a matter of law there was no negligence upon the part of the railroad company. The rule is well settled that we will not review the facts as found by the Appellate Court, unless the facts so found, in themselves, show that as a matter of law a wrong conclusion was reached by that court. *Gnat* v. *Richardson*, 378 Ill. 626; *Goodrich* v. *Sprague*, 376 Ill. 80.

The contention of appellant that the signals were exclusively for warning of the approach of a train is opposed by the claim of appellees that the railroad company did

undertake more than this, and in fact installed a system of warning that, when properly operating, showed when a train was on the track and when it was clear. If the claim of appellees is true a failure of the signals to operate would be evidence of negligence. There was some evidence to sustain this claim, and, hence, no question of law arises and we will not weigh conflicting evidence.

The Appellate Court having found the railroad company was guilty of negligence, its finding is conclusive, and therefore its judgment should be, and is, affirmed.

*Judgment affirmed.*

Mr. JUSTICE WILSON, dissenting.