**O'KEEFE et al. v. WABASH R. CO.**
**No. 10059.**

United States Court of Appeals
Seventh Circuit.

Nov. 29, 1950.

Rehearing Denied Dec. 28, 1950.

Elmer W. Freytag, Kenneth B. Hawkins, Chicago, Ill., for appellant.

Arthur S. Gomberg, Joseph Reiff, Chicago, Ill., for appellees.

Before KERNER, DUFFY and FINNEGAN, Circuit Judges.

KERNER, Circuit Judge.

This is an appeal from a judgment on a verdict for plaintiffs in a suit to recover for injuries sustained when the automobile in which they were riding crashed into the engine and caboose of a freight train standing during switching operations in the intersection of defendant's tracks and the highway along which plaintiffs were riding. At the close of all the testimony defendant moved the court for a directed verdict on the ground that there was no evidence showing any negligence on the part of defendant which proximately caused or contributed to cause the accident. This motion was denied. After the return of the jury's verdict, defendant moved for judgment notwithstanding the verdict. This too was denied.

By their complaint plaintiffs asserted negligence on the part of defendant in four respects:

1. That it carelessly, negligently and improperly drove, managed, controlled and operated its engine and caboose.

2. That it obstructed a public highway in violation of § 70, Chap. 114 of the Illinois statutes.

3. That it failed to ring a bell or blow a whistle as required by § 59 of Chap. 114.

4. That it maintained and operated a defective signalling device which was not in operation at the time the engine approached the intersection or while it was in the intersection.

The accident occurred about 5:30 A. M. (D.S.T.) September 7, 1947. Plaintiffs had met a friend, Leo Vezina, late the evening before at the corner of 61st and Halsted Streets in Chicago, and about midnight they started out for a drive with him. They just drove around the south side for several hours without any particular destination and without stopping anywhere, finally driving out on the Southwest Highway. Some place along the way they ran into a dense fog and got lost. At some point they turned onto Ridgeland Avenue and drove north on it without, however, knowing where they were or in which direction they were going. None of the three was familiar with the road or had ever been over it before.

At a point near 103rd Street, outside the Chicago city limits, defendant's tracks cross Ridgeland Avenue at a 46° angle and run in a northeast and southwest direction. Ridgeland Avenue is a two-lane concrete highway about 20 feet wide, running in a north and south direction. 299 feet south of this crossing there is a standard railroad warning sign with reflector buttons, located 11 feet east of the east edge of the road. About 80 feet south of the crossing there is a public street light on the east side of the road on a pole about 20 feet above the ground. 15½ feet south of the tracks and 7½ feet east of the road there is a large white crossbuck sign with an automatic electric flasher signal attached, equipped with red lights for the letters S T O P and flasher signals on each side. The area surrounding the crossing is flat and open, and the only buildings anywhere near it are a small station west of the road, and a tavern east.

As plaintiffs and Vezina were driving north through the fog toward the railroad crossing, a 36-car freight train under the operation and control of defendant was engaged in switching operations on the tracks. Just prior to the approach of the automobile, the engine hooked to the rear end of the caboose had backed over the crossing, headed southwest, and stopped with the front of the engine just west of the center line of the highway and the rear of the caboose across the northbound traffic lane. They had been standing there while the engineer waited for a go-ahead signal for a period variously estimated at from one to five minutes when the automobile with great force crashed between the engine and caboose and was jammed under the rear steps of the caboose. The automobile was practically demolished and all three occupants were injured.

There is no dispute respecting the manner in which Vezina approached the crossing. He testified that O'Keefe sat in the right front seat and Vail in the right rear seat; that he was driving about 20 or 25 miles an hour, with bright headlights on and two windshield wipers working, and that neither plaintiff at any time protested or objected as to the speed or manner of driving; that he could see about 15 or 18 feet ahead of where he sat; that he was watching the black center line of the road; and that the first indication he saw of danger was "the big wheels * * * and then I seen the flashes at the flashings —that big pole there, and that was all." He stated that he saw no lights at all— on reflector buttons, on the crossing warning, on the flasher signal, on the engine or caboose; nor did he hear any bell or whistle. Plaintiffs likewise testified that they saw no lights before the accident. A deputy sheriff who arrived at the scene of the accident 20 or 25 minutes afterwards stated that the flasher signal on the northbound warning sign was not then operating and he checked with the engineer to find out why; when the latter backed his engine over the circuit box located 300 yards southwest the flasher began working again.

O'Keefe testified that he could see about 15 or 20 feet through the windshield; that he did not see any lights of any kind, and

did not see the railroad target sign with reflector buttons south of the crossing; that the first things he saw were the cross-bars and the train simultaneously, 10 or 15 feet away, at which time he yelled "Look out," and that at the time of the impact, the automobile was being driven at the rate of 20 miles per hour. Vail testified that just before the accident Vezina was driving between 15 and 25 miles an hour; that he was watching the side of the road and could see about 15 feet from where he sat, and that he did not see the railroad target sign with reflector buttons or the street light, or any light from the caboose or the engine or flasher signals.

Three of the members of the train crew testified positively that the flasher lights were working at all times during the switching operations until after the accident; a fourth, the fireman, said he did not know. The rear brakeman said that after the accident the car lay practically under these flashers. He and the engineer both said the flashers stopped working some time later.

In addition to the crew there were two United States Government agents on the train on an assignment related to a nine-car Government shipment that was a part of the train. One testified that the flashers were working just before the accident, but his evidence was somewhat confused as to when they stopped working. The other testified unequivocally that they were working until after the accident. He had been riding in the caboose and alighted when it stopped and as he stood watching the "blinker lights" because they amused him, he heard the crash. Both of these guards also testified that the bell on the engine was ringing at all times, as did the fireman and the engineer who stated that it was an automatic one.

The evidence was undisputed that the caboose was lighted with several oil lamps or lanterns—it carried a "marker light" on each side 5 or 6 feet above the rear platform, both lighted, and one of these was directly over the steps into which the automobile crashed; there was a lighted "Aladdin" lamp on the desk which stood directly under an open window about 15 feet from the rear of the caboose, and another lamp across from it; the rear door of the caboose was open. All the usual lights in the cab of the engine were burning, but the headlight was turned off, as the engineer explained, so he could see the signals and because he did not think it was necessary while he was backing up. He did, however, have the backing light on the coal tender turned on, and this served as a headlight during the backing operations.

In this court defendant contends (1) that the evidence affirmatively showed, as a matter of law, that neither of the plaintiffs was in the exercise of ordinary care for his own safety at the time of the accident and immediately prior thereto, and conclusively showed that the injuries sustained were the proximate result of their own negligence; and (2) that there was no substantial legal evidence establishing or tending to establish that defendant was guilty of any acts of negligence charged against it.

Plaintiffs' theory was that because of the fog they were unable to discover the presence of the engine and caboose on the crossing, and they make the point that the flasher signal was not working just prior to the accident. They insist, in this situation, it was for the jury to say whether they were guilty of contributory negligence.

True, it is possible that the fog made it difficult for plaintiffs to discover the presence of the engine and caboose on the crossing, but it must be remembered that the fog was a warning of the most forceful and potent character directing Vezina's as well as plaintiffs' attention to the necessity resting upon them to drive carefully and slowly enough to stop and avoid striking any object which might reasonably be expected to be upon the highway. Here we have a case where plaintiffs, under a duty to exercise care commensurate with the hazard to which they were exposed, drove around for over five hours without stopping, and although finding themselves in totally unfamiliar territory, with visibility

limited by fog, continued to drive on at such speed that they were unable to stop within the distance covered by the headlights of the automobile. It would seem that under these circumstances the evidence established contributory negligence, but since we are in doubt as to whether there was a jury question in this respect, we prefer to discuss defendant's second contention, i. e., that no actionable negligence was shown. We must determine whether there was any evidence upon which a charge of negligence on defendant's part can be found in the record.

 Since this is a negligence case, plaintiffs had the burden of proving that defendant was guilty of negligent conduct which was the proximate cause of their injuries. The case is, of course, governed by Illinois law where the rule appears to be as stated in Coleman v. Chicago, B. & Q. R. Co., 287 Ill.App. 483, 489, 5 N.E.2d 103, 105: "* * * the decided weight of authority establishes the proposition that where a railroad train rightfully and for a reasonable period of time occupies a crossing of its tracks with a public highway, the very presence of the train is adequate notice and warning to any traveler, who is in the exercise of ordinary care for his own safety, that the crossing is occupied; that no additional signs, signals or warnings are required to be given by the railroad company, and that no negligence can be imputed to it for its failure so to do."

That case presented facts very similar to those here involved. The accident occurred at night when an automobile in which the plaintiff was riding as either a guest or fellow enterprisor crashed into a standing freight train engaged in switching operations across the highway crossing; visibility was obscured by heavy smoke from a nearby slag pile, and plaintiff charged that there were insufficient signs and signals, and that defendant failed to give proper notice of the fact that the crossing was blocked. The Appellate Court, however, held that plaintiff had failed to establish one of the essential elements of his case, namely, that some act or omission of defendant was the proximate cause of his injuries, hence reversed a judgment theretofore rendered on a jury verdict in favor of plaintiff. See also Cash v. New York Central R. Co., 294 Ill. App. 389, 13 N.E.2d 1012; Fox v. Illinois Central Railroad Co., 308 Ill.App. 367, 31 N.E.2d 805; Probert v. Chicago, I. & L. Ry. Co., 7 Cir., 93 F.2d 259; Note, 161 A.L.R. 111.

The Coleman case has never been overruled and remains a correct statement of the Illinois law in the absence of special and unusual circumstances. The recent case of Langston v. Chicago & North Western Ry. Co., 398 Ill. 248, 75 N.E.2d 363, is an illustration of the exception to the Coleman rule. The facts of that case were very different from those here presented. The railroad there undertook to maintain crossing signals synchronized with a highway signal which showed a red light if a train was on or approaching the crossing, and a green light if the crossing was clear. Plaintiffs were injured when an automobile in which they were riding for hire at night ran into the side of a moving train on the crossing although the traffic signal at the time showed green, apparently as the result of a failure of the railroad signal. The court referred to the cases cited above but held that they were not in point on the question involved under the circumstances there presented, and 398 Ill. at page 254, 75 N.E.2d at page 366, stated: "It is apparent that the crossing involved in this case was an especially dangerous one, owing to the fact a heavily traveled State highway had to be crossed, and then a short space between the highway and a railroad track to be crossed, and the possibility of a traveler being trapped in a place of danger, if not warned. * * * 'It must not be lost sight of that the purpose of this signal was not only to warn traffic of the approach of trains, but its nonoperation was to assure the traveler that it was safe to cross.'

"* * * The evidence discloses a case where there was an invitation to cross, with

an implied assurance of safety. *This is quite different from the ordinary case where the train is, in itself, warning and no invitation is made by the railroad company."* (Our emphasis.)

Plaintiffs seek to bring themselves within the rule of the Langston case, contending that the evidence was sufficient to present a jury question on the theory of entrapment—that the acts of defendant's employees beckoned or lured them into disaster. Defendant urges, on the other hand, that there was no substantial evidence of its negligence sufficient to present a jury question, and that the evidence is clear that Vezina's negligence in driving on at such a speed that he was unable to stop his car in time was the proximate cause of the accident.

▆ Before this court plaintiffs assert the violation of a third section of the statute on Railroads, § 187, Chap. 114, requiring headlights on locomotive engines. The record does not sustain this charge, as it does not sustain the charge of the amended complaint that defendant violated § 70 relating to the unnecessary obstruction of a public highway, or § 59 relating to the ringing of a bell or blowing of a whistle.

▆ We find nothing in the facts of this record to take the case out of the ordinary rule that "one cannot recover for driving his automobile into a train standing across a crossing." The record does not sustain the four charges of negligence alleged in the amended complaint on which the case was heard. Nor does it sustain the three charges of the second amended complaint filed seven days after defendant's motion to set aside the verdict and judgment thereon and enter judgment for defendant, or for new trial. By this second amended complaint, plaintiffs, in effect, withdrew the second, third and fourth charges originally relied upon and substituted in lieu thereof the following:

"(b) The defendant carelessly and negligently failed to equip and maintain at said intersection sufficient, suitable and proper watchman gates, signals and lights to warn the public of the *approach* of said engine and caboose;

"(c) The defendant carelessly and negligently failed to give suitable, sufficient and proper notice, signal and warning of the presence of said locomotive and caboose."

Obviously ¶ (b) has no bearing on the facts of this case, based as it is on a duty with respect to the approach of the train. And we are convinced that the record does not sustain plaintiffs' charge with respect to ¶ (c).

It appears that the court, in considering defendant's motion for judgment notwithstanding the verdict or for a new trial, and the second amended complaint, considered that "the case was properly submitted to the jury for the purpose of determining the existence of due care on the part of plaintiffs" in view of the fact of the "dense fog and misty weather," citing Miles v. American Steel Foundries, 302 Ill.App. 262, 23 N.E.2d 754. However, as we have observed, the facts do not bring this case into the realm of the exception to the ordinary rule, as discussed in the Langston case. We are cited to no authority and our research has disclosed none holding that in order to avoid the charge of negligence the fact of fog alone is enough to impose a duty on the railroad to give more notice and warning than the record shows was given here.

Since the evidence fails to show any negligence of defendant which proximately contributed to the accident, the judgment must be reversed. It is so ordered.