249 F.2d 58
 Balph O. EGGERS, Administrator of the Estate of Roberta H.
Eggers, Deceased, Ralph O. Eggers, Individually, Linda Lee
Eggers, a Minor, and Janice E. Eggers, a Minor, by Ralph O.
Eggers, Their Father and Next Friend, Plaintiffs-Appellants,
v.
The CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD
COMPANY, Defendant-Appellee.
 No. 12007.
 United States Court of Appeals Seventh Circuit.
 Nov. 4, 1957.
 
 1
 Frederick W. Allen, Peoria, Ill., for appellants.
 
 
 2
 Lyle W. Allen, Peoria, Ill., Edwin O. Schiewe, Chicago, Ill., Clarence W. Heyl, Heyl, Royster & Voelker, Peoria, Ill., for defendant-appellee.
 
 
 3
 Before MAJOR and FINNEGAN, Circuit Judges, and PLATT, District Judge.
 
 
 4
 PLATT, District Judge.
 
 
 5
 This is an appeal from an order of the district court dismissing appellants' complaint. In the complaint the appellants allege that on January 19, 1953 about 10 p.m. an automobile operated by Ralph O. Eggers, one of the appellants, struck the side of appellee's 25 car train as it was crossing a highway near Cherry, Illinois. Eggers' wife and two daughters were riding in the automobile. His wife was killed in the collision and the other occupants were injured. The suit is brought by the appellant Eggers individually, as administrator of his wife's estate, and as next friend of the two children. It is alleged that the appellants were unfamiliar with the highway and crossing, and the night was dark and foggy.
 
 
 6
 The appellants alleged specific acts of negligence on the part of the railroad in that it failed to ring a bell or blow a whistle while approaching or occupying the crossing,[1] failed to maintain advance warning signs and crossbuck signs,[2] and failed to provide lights on the cars, a flagman, or advance warning signs.
 
 
 7
 While the allegations in the complaint might present another basis for recovery, appellants' counsel in his argument before this court concedes that they stand on the allegations that the appellee's train had fully occupied the crossing at the time of the collision and that the allegation of failure to blow a whistle or ring a bell was made only for the purpose of showing that no warning was given that the train was occupying the crossing. The appellants are confined to the question so presented. See Sweeney v. District of Columbia, 1940, 72 App.D.C. 30, 113 F.2d 25, 129 A.L.R. 1370, certiorari denied 310 U.S. 631, 60 S.Ct. 1082, 84 L.Ed. 1402; Moffat Tunnel Improvement Dist. v. Denver & S.L. Ry. Co., 10 Cir., 1930, 45 F.2d 715, 726, certiorari denied 283 U.S. 837, 51 S.Ct. 485, 75 L.Ed. 1448. Thus, the issue presented is whether the railroad was under a duty to give a warning of the presence of its train upon the crossing. The determination of this question depends upon the substantive law of Illinois. O'Keefe v. Wabash R. Co., 7 Cir., 1950, 185 F.2d 241, certiorari denied 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1354.
 
 
 8
 This court has had occasion to review the applicable Illinois cases. In Schroeder v. Minneapolis, St. P. & S.S. M.R. Co., 7 Cir., 1953, 204 F.2d 758, a dismissal of a somewhat similar complaint by the plaintiff driver and guest passenger was affirmed. In that case it was alleged that the plaintiffs' vehicle collided with the side of the defendant's train during the nighttime; that the plaintiffs were familiar with the crossing; and that the electric wigwag signals at the crossing were not operating. This court relied on the rule announced in Coleman v. Chicago, B. & Q.R. Co., 1936, 287 Ill.App. 483, 5 N.E.2d 103, and sustained the dismissal of the complaint. The Coleman case involved an action by a guest passenger against a railroad for injuries sustained when the automobile in which the plaintiff was riding struck a railroad car which was occupying the crossing. The driver and the plaintiff were familiar with the crossing and smoke from a nearby pile of slag obscured visibility. There, as here, the plaintiff claimed,
 
 
 9
 'there were insufficient signs and signals, and by the defendant's failure to give proper notice of the existence of the fact the crossing was blocked, caused the injury to the plaintiff.' 287 Ill.App. at page 485, 5 N.E.2d at page 104.
 
 
 10
 The Illinois Appellate Court reversed a verdict for the plaintiff and stated:
 
 
 11
 'where a railroad train rightfully and for a reasonable period of time occupies a crossing of its tracks with a public highway, the very presence of the train is adequate notice and warning to any traveler, who is in the exercise of ordinary care for his own safety, that the crossing is occupied; that no additional signs, signals or warnings are required to be given by the railroad company, and that no negligence can ba imputed to it for its failure so to do.'
 
 
 12
 287 Ill.App. 489, 5 N.E.2d 105.
 
 
 13
 In Cash v. New York Cent. R. Co., 1938, 294 Ill.App. 389, 13 N.E.2d 1012, the Illinois Appellate Court reiterated the rule it announced in the Coleman case and sustained dismissal of a complaint in spite of an allegation of extra hazardous condition at the crossing. The Coleman case has also been followed in Miles v. American Steel Foundries, 1939, 302 Ill.App. 262, 23 N.E.2d 754; Fox v. Illinois Cent. R. Co., 1941, 308 Ill.App. 367, 31 N.E.2d 805; and in this court, O'Keefe v. Wabash R. Co., supra.
 
 
 14
 Appellants attempt to come within the exception to the general rule as set forth in Langston v. Chicago & North Western Ry. Co., 1947, 398 Ill. 248, 75 N.E.2d 363 where a motorist and his guest passengers whose automobile struck the side of a moving train upon a crossing, during a dense fog, were granted recovery. That case is obviously distinguishable from the instant case, in that the railroad maintained crossing signals that were synchronized with nearby highway signals so that the traffic lights would be red as the train was approaching or was occupying the crossing. The plaintiffs were familiar with the operation of the signals and at the time of the collision the traffic light was green and the crossing signals were not in operation. The Supreme Court of Illinois recognized the general rule but made an exception in this case. The court there stated in 398 Ill. at page 255, 75 N.E.2d at page 366:
 
 
 15
 'The evidence discloses a case where there was an invitation to cross, with an implied assurance of safety. This is quite different from the ordinary case where the train is, in itself, warning and no invitation is made by the railroad company.'
 
 
 16
 The failure to maintain a visible cross-buck was not an invitation to a traveling motorist on the highway who was unfamiliar with the crossing. The crossbuck is a warning just as a whistle and a bell of the approach of the train, but when the train occupies the crossing its very presence is sufficient warning that the train is lawfully occupying the crossing. In Schroeder v. Minneapolis, St. P. & S.S.M.R. Co., supra, the plaintiffs were familiar with the crossing, the electric signal light was not in operation, and it was held that the exception in the Langston case was not applicable. Clearly in the instant case there was no invitation nor similar circumstances as in the Langston case to bring it within the exception.
 
 
 17
 Appellants try to apply the theory of recovery as declared in Warren v. Patton, 2 Ill.App.2d 173, 119 N.E.2d 465; Moyer v. Vaughan's Seed Store, 242 Ill.App. 308, where the plaintiff's vehicle collided with an unlighted or insufficiently lighted vehicle on a public highway. In Cash v. New York Cent. R. Co., supra, the plaintiff, as in the instant case, made the same effort. In distinguishing Johnson v. Sandberg, 283 Ill.App. 509, where a truck without reflectors blocked a public highway, the court, in the Cash case, said in 294 Ill.App. at page 394, 13 N.E.2d at page 1012, 1014:
 
 
 18
 'The defendant's truck and trailer were not in a position where they had a lawful right to be and the duty of the driver (of the truck) was entirely different from that of a railroad company * * *.'
 
 
 19
 It is apparent that the appellants' cases are not relevant to the instant case.
 
 
 20
 For the reasons stated the order dismissing the complaint is affirmed.
 
 
 
 [1]
 Ill.Rev.Stats.1955, c. 114, 58. 'Every railroad corporation shall cause boards, well supported by posts or otherwise, to be placed and constantly maintained upon each public road or street, where the same is crossed by its railroad on the same level. Said boards shall be elevated so as not to obstruct the travvel, and to be easily seen by travelers. On each side of said boards shall be painted in capital letters, of at least the size of nine inches each, the words 'railroad crossing,' or 'look out for the cars."
 
 
 [2]
 Ill.Rev.Stats.1955, c. 114, 59. 'Every railroad corporation shall cause a bell of at least thirty pounds weight, and a steam whistle placed and kept on each locomotive engine, and shall cause the same to be rung or whistled by the engineer or fireman, at the distance of at least eighty rods from the place where the railroad crosses or intersects any public highway, and shall be kept ringing or whistling until such highway is reached.'